# STATE OF MICHIGAN

# COURT OF APPEALS

CANNON TOWNSHIP,

Plaintiff-Appellee,

v

ROCKFORD PUBLIC SCHOOLS,

Defendant-Appellant.

FOR PUBLICATION
July 14, 2015
9:15 a.m.

Nos. 320683; 320940
Kent Circuit Court
LC No. 12-009768-CZ

Before: SERVITTO, P.J., and BECKERING and BOONSTRA, JJ.

BOONSTRA, J.

This is a consolidated appeal involving a claim under the "sewage disposal system event" exception to the Governmental Tort Liability Act (GTLA), MCL 691.1401 *et seq*. In Docket No. 320683, defendant Rockford Public Schools (RPS) appeals by right the trial court's order denying RPS's motion for summary disposition, in which RPS had argued that plaintiff Cannon Township ("the township") was not the real party in interest and had failed to plead its claims in avoidance of governmental immunity. In Docket No. 320940, RPS appeals, by leave granted,[1] that same order, seeking again a determination that the township is not the real party in interest. This Court previously consolidated these appeals.[2] For the reasons set forth below, we affirm the trial court's order denying RPS's motion for summary disposition.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Cannon Township, located in Kent County, Michigan, owns and operates a sewage water collection and transportation system (i.e., sewer system), a portion of which is known as the "Davies line." The Davies line serves the East Rockford Middle School (part of RPS, a public school system) as well as a number of residential customers, including Robert and Pamela Mack. The middle school has a water filtration system that connects to the Davies sewer line. The filtration system, which is located in the middle school's boiler room, works by filtering water through a series of tanks and pipes to remove iron and other sediments. The "backwash"—i.e.,

---

[1] *Cannon Twp v Rockford Pub Sch*, unpublished order of the Court of Appeals, entered August 8, 2014 (Docket No. 320940).

[2] *Id*.

the wastewater containing the impurities—is ultimately discharged into the Davies line during a "backwash cycle."

The parties agree that the filtration system was designed so that when the system is filtering water, the pipes connecting the system to the sewer line, which are controlled by valves, remain closed. However, during the backwash cycle, the valves are designed to automatically open so that the wastewater can be discharged into the sewer line. The backwash cycle is designed to last approximately 15 minutes, after which the valves are supposed to close. However, if a power outage occurs during a backwash cycle, the valves remain in the open position after the power is restored, resulting in a large amount of water being discharged into the sewer line. The Davies line is not designed to handle a discharge of such an amount of water. Accordingly, when such an event occurs, the Davies line is overwhelmed, which can lead to sewage backups.

This is exactly what happened on the weekend of August 20, 2011, when a power outage occurred, causing a valve in East Rockford Middle School's water filtration system to remain open. This resulted in a prolonged backwash cycle that caused a large volume of water to be discharged into the sewer line, which eventually led to a sewage backup in the Macks' home. The sewage backup allegedly caused in excess of $90,000 in damages.

The Macks submitted a claim to their homeowner's insurance company, which immediately paid the $5,000 policy limit for the event. The Macks then sought further compensation from the township and/or RPS. On November 1, 2011, the township and the Macks reached a settlement whereby the township agreed to pay the Macks, through its insurer, the Michigan Municipal League Liability and Property Pool (MMLLPP), the sum of $50,000 in partial compensation for the damages they had incurred. In exchange, the Macks agreed to release the township from any future liability and to "fully assign" to the township their claim "in total, including but not limited to any and all damages in excess of the Settlement Sum and including but not limited to any and all claims against [RPS] related to" the 2011 event. The parties further agreed that the township would likely pursue a claim against RPS "as an assignee or subrogee of the Macks' rights," that the Macks authorized such a lawsuit by the township, and that if the township recovered more than $50,000 in damages from RPS, the excess would be remitted to the Macks.

In October 2012, the township filed suit against RPS "on its behalf and additionally as assignee and subrogee of" the Macks, seeking $90,000 in damages. Subsequently, on October 14, 2013—i.e., approximately one year after the complaint was filed—the township and its insurer, the MMLLPP, entered into an "assignment agreement," whereby the parties stipulated that the MMLLPP had previously paid $50,000 to the Macks "on behalf of [the township]" and was therefore subrogated to the Macks' rights to recover against other entities. The agreement provided that MMLLPP would "assign all of its subrogation rights and obligations" to the township in exchange for consideration of $1 and the township's agreement to hold the MMLLPP harmless for any future liability arising from the loss suffered by the Macks.

Subsequently, RPS moved the trial court for summary disposition pursuant to MCR 2.116(C)(4) (lack of subject matter jurisdiction),[3] (C)(7) (claim barred by governmental immunity), and (C)(8) (failure to state a claim on which relief can be granted). RPS argued that the township was not the real party in interest to pursue a claim against RPS because it had paid no money to the Macks and therefore had no basis to pursue an equitable subrogation claim, and further because the Macks "could not, and did not, assign their cause of action for amounts in excess of insurance proceeds." RPS additionally argued that the township had failed to plead in avoidance of RPS's governmental immunity because it could not satisfy all of the elements of the "sewage disposal system event" exception to the GTLA, as outlined in MCL 691.1417. Specifically, RPS argued that the township had failed to show that (1) the water filtration system was a "sewage disposal system," as defined in MCL 691.1416(j); (2) there was a "defect" in that "sewage disposal system," as defined in MCL 691.1416(e); or (3) RPS had any previous knowledge of such a "defect." The township responded that it was the real party in interest by virtue of the assignments it had received from the Macks and the MMLLPP, and that it had sufficiently pleaded its claim in avoidance of governmental immunity.

After a hearing, the trial court denied RPS's motion for summary disposition. With respect to the issue of whether the township was a real party in interest, the trial court concluded that, although the township itself had not suffered any loss, it was the real party in interest by virtue of the assignment agreements it had executed with the Macks and the MMLLPP, respectively. With respect to governmental immunity, the trial court concluded, based upon the evidence presented, that the school's water filtration system "fits comfortably" within the statutory definition of a "sewage disposal system," that the township had satisfied its burden of producing evidence of a defect in the water filtration system, and that RPS "most certainly 'knew, or in the exercise of reasonable diligence should have known, about the defect'" before the August 20, 2011 sewage event. RPS challenges on appeal each of these determinations.

## II. REAL PARTY IN INTEREST

RPS argues that the trial court erred in concluding that the township was the real party in interest. We disagree. We review de novo a trial court's decision on a motion for summary disposition. *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 583; 794 NW2d 76 (2010). In this case, as it pertained to the real-party-in-interest argument, the trial court viewed RPS's motion as one brought pursuant to MCR 2.116(C)(5) (plaintiff lacks legal capacity to sue). However, as our Supreme Court has previously held, "the real-party-in-interest [defense] is not the same as the legal-capacity-to-sue defense." *Leite v Dow Chem Co*, 439 Mich 920, 920; 478 Mich 892 (1992). Thus, a motion for summary disposition asserting the real-party-in-interest defense more properly fits "within MCR 2.116(C)(8) or MCR 2.116(C)(10), depending on the pleadings or other circumstances of the particular case." *Id*. Because it is clear

---

[3] Although RPS made reference to MCR 2.116(C)(4) in its motion, it made no reference to that subrule in its brief in support of its motion. Instead it made reference to MCR 2.116(C)(10) as a basis for summary disposition. The issue of subject-matter jurisdiction was not raised before or decided by the trial court, nor does RPS argue that issue on appeal.

in this case that the trial court reviewed documents outside the pleadings in reaching its decision as to whether the township was the real party in interest, we will treat the trial court's decision as made pursuant MCR 2.116(C)(10). See *Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999). MCR 2.116(C)(10) provides that summary disposition is proper when "there is no genuine issue as to any material fact." A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Id*. at 120. When deciding a motion under MCR 2.116(C)(10), a trial court may consider affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, in the light most favorable to the nonmoving party. *Id*. "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*. A genuine issue of material fact exists when, viewed in the light most favorable to the non-moving party, reasonable minds could differ on an issue. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). Further, the issue of whether a plaintiff is the real party in interest is a question of law that we review de novo. *In re Beatrice Rottenberg Living Trust*, 300 Mich App 339, 354; 833 NW2d 384 (2013).

"An action must be prosecuted in the name of the real party in interest[.]" MCR 2.201(B). As previously discussed by this Court,

> A real party in interest is the one who is vested with the right of action on a given claim, although the beneficial interest may be in another. This standing doctrine recognizes that litigation should be begun only by a party having an interest that will assure sincere and vigorous advocacy. In addition, the doctrine protects a defendant from multiple lawsuits for the same cause of action. A defendant is not harmed provided the final judgment is a full, final, and conclusive adjudication of the rights in controversy that may be pleaded to bar any further suit instituted by any other party. [*Barclae v Zarb*, 300 Mich App 455, 483; 834 NW2d 100 (2013) (quotations and citations omitted).]

In this case, there is no dispute that the township did not suffer damages and did not itself pay any money to the Macks. However, both the Macks and the MMLLPP, who each had a right of action against RPS, assigned their respective rights to the township. As the trial court correctly recognized, an assignee of a cause of action becomes the real party in interest with respect to that cause of action, inasmuch as the assignment vests in the assignee all rights previously held by the assignor. *Kearns v Michigan Iron & Coke Co*, 340 Mich 577; 66 NW2d 230 (1954); *Burkhardt v Bailey*, 260 Mich App 636, 653; 680 NW2d 453 (2004). Thus, by virtue of the assignments, the township became the real party in interest.

In reaching the above conclusion, we recognize that the MMLLPP did not assign its rights to the township until after this lawsuit was filed. Thus, at the time the township initiated the lawsuit, it was not the real party in interest as it pertained to the first $50,000 of damages sought in the complaint. However, in denying RPS's motion for summary disposition, the trial court granted the township leave to amend its complaint to properly reflect that it was litigating as the assignee of both the Macks and the MMLLPP. RPS does not assert, and we do not find, any error in the trial court's grant of leave to amend. See MCR 2.116(I)(5). Further, although the township agreed to remit any damages awarded by the trial court above $50,000 to the

Macks, to be a real party in interest, a plaintiff need only be vested with the right of action on the claim; the beneficial interest may be with another. *Barclae*, 300 Mich App at 483.

Relatedly, RPS argues that the township cannot be considered a "claimant" as that term is defined by the "sewage disposal system event" exception to the GTLA. We disagree. As discussed further below, to justify the application of the "sewage disposal system event" exception to the GTLA, a "claimant" is required to meet several elements. See MCL 691.1417. A "claimant," for purposes of the "sewage disposal system event" exception, "means a property owner that believes that a sewage disposal system event caused damage to the owner's property . . . or a person making a claim on behalf of a property owner . . . ." MCL 691.1416(c). The definition specifically includes, as a claimant, "a person that is subrogated to a claim of a property owner[.]" Here, there is no dispute that the Macks are property owners who suffered damages from what is alleged to have been a sewage disposal system event. There is also no dispute that the Macks were reimbursed $50,000 from the MMLLPP to cover some, but not all, of those alleged damages. Thus, under the plain terms of the statute, both the Macks, as the property owners, and the MMLLPP, as a subrogee, would have been entitled to bring a claim under the "sewage disposal system event" exception to the GTLA. MCL 691.1416(c). However, as discussed above, both the Macks and the MMLLPP assigned their rights to the township. Thus, having been vested with all the rights previously owned by the Macks and the MMLLPP, the township is bringing the instant lawsuit "on behalf of" those two claimants and is, therefore, a claimant in its own right.

## III. GOVERNMENTAL IMMUNITY

RPS also argues that the trial court erred in denying its motion for summary disposition based on governmental immunity. Again, we disagree. As stated above, we review a trial court's decision on a motion for summary disposition de novo. *BC Tile*, 288 Mich App at 583. Likewise, claims of governmental immunity under MCR 2.116(C)(7) present a question of law, which we review de novo. *Willett v Charter Twp of Waterford*, 271 Mich App 38, 45; 718 NW2d 386 (2006).

> Under MCR 2.116(C)(7), all well-pleaded allegations must be accepted as true and construed in favor of the nonmoving party, unless contradicted by any affidavits, depositions, admissions, or other documentary evidence submitted by the parties. But such materials shall only be considered to the extent that the[y] . . . would be admissible as evidence . . . . If no [material] facts are in dispute, or if reasonable minds could not differ regarding the legal effect of the facts, the question of whether the claim is barred by governmental immunity is an issue of law. [*Id.* (Internal quotations and citations omitted).]

We review issues of statutory interpretation de novo. *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 196; 826 NW2d 197 (2012).

Subject to various exceptions, a governmental agency is generally immune from tort liability when it is engaged in the exercise or discharge of a governmental function. MCL 691.1407(1). The immunity from tort liability provided by MCL 691.1407 "is expressed in the broadest possible language—it extends immunity to all governmental agencies for *all* tort

liability whenever they are engaged in the exercise or discharge of a governmental function." *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 156; 615 NW2d 702 (2000) (citation omitted, emphasis in original). The statutory exceptions are to be narrowly construed. *Id*. at 158.

Among the statutory exceptions to governmental immunity is the "sewage disposal system event" exception, MCL 691.1416 through MCL 691.1419. MCL 691.1417(2) provides that "[a] governmental agency is immune from tort liability for the overflow or backup of a sewage disposal system unless the overflow or backup is a sewage disposal system event and the governmental agency is an appropriate agency." In *Linton v Arenac Co Rd Comm*, 273 Mich App 107, 113-114; 729 NW2d 883 (2006), this Court set forth the elements a claimant must show in order to avoid governmental immunity pursuant to this exception:

> (1) that the claimant suffered property damage or physical injuries caused by a sewage disposal system event [see MCL 691.1417(2) and (3)];
>
> (2) that the governmental agency against which the claim is made is "an appropriate governmental agency . . ." [see MCL 691.1417(2), (3)(a)];
>
> (3) that "[t]he sewage disposal system had a defect" [see MCL 691.1417(3)(b)];
>
> (4) that "[t]he governmental agency knew, or in the exercise of reasonable diligence should have known, about the defect" [see MCL 691.1417(3)(c)];
>
> (5) that "[t]he governmental agency, having the legal authority to do so, failed to take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect" [see MCL 691.1417(3)(d)];
>
> (6) that "[t]he defect was a substantial proximate cause of the event and the property damage or physical injury" [see MCL 691.1417(3)(e)];
>
> (7) "reasonable proof of ownership and the value of [any] damaged personal property" [see MCL 691.1417(4)(a)]; and
>
> (8) that the claimant provided notice [to the governmental agency of the claim] as set forth in MCL 691.1419 [see MCL 691.1417(4)(b)].

A plaintiff must satisfy all of these elements to survive a motion for summary disposition based on governmental immunity. *Willett*, 271 Mich App at 50.

RPS argues that the trial court erred in finding that the township could show that (1) the water filtration system is a "sewage disposal system"; (2) the system had a "defect"; and (3) RPS "knew, or in the exercise of reasonable diligence should have known, about the defect." We disagree.

With respect to whether East Rockford Middle School's filtration system is a "sewage disposal system," MCL 691.1416(j) defines a "sewage disposal system" as

[a]ll interceptor sewers, storm sewers, sanitary sewers, combined sanitary and storm sewers, sewage treatment plants, *and all other plants, works, instrumentalities, and properties used or useful in connection with the collection, treatment, and disposal of sewage and industrial wastes*, and includes a storm water drain system under the jurisdiction and control of a governmental agency. [Emphasis added.]

The statute does not itself define the terms "sewer" or "sewage," and these terms thus should be provided their plain and ordinary meaning. *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 102; 693 NW2d 170 (2005). The word "sewer" is commonly defined as "an artificial conduit, usu. underground, for carrying off waste water and refuse, as in a town or city." See *Random House Webster's College Dictionary* (2000), 1205. Consistent with this definition, "sewage" is itself commonly understood to mean "the waste matter that passes through sewers." *Id*. Here, the school's water filtration system is primarily used as a potable water delivery system. However, as part of the process of delivering potable water, the system removes waste matter, such as iron and other unwanted sediments. The water containing this waste matter is ultimately discharged into the sewer line, a "conduit for carrying off waste water," during a backwash cycle. *Id*. Because the system collects and disposes of unwanted wastes, and because those unwanted wastes are discharged directly into a sewer line, we hold that the filtration system is properly considered an "instrumentality" "used or useful in connection with the collection, treatment, and disposal of sewage and industrial wastes." MCL 691.1416(j). Because the township could show that the water filtration system is a "sewage disposal system" for purposes of the "sewage disposal system event" exception to the GTLA, RPS was not entitled to summary disposition on this ground.

With respect to whether there was a "defect" in the water filtration system, MCL 691.1416(3) defines a "defect" as "a construction, design, maintenance, operation, or repair defect." As we observed in *Willett*, "[a] 'defect' is defined as 'a fault or shortcoming; imperfection.' " *Willett*, 271 Mich App at 51, quoting *Random House Webster's College Dictionary* (1997).

Here, as the trial court noted, the parties do not dispute the nature of the flaw in the water filtration system at the time the sewage back occurred: if electrical power to the system was interrupted during a backwash cycle, the valves remained in the open position after the power was restored, resulting in a large amount of water being discharged into the sewer line, which overwhelmed the Davies line and led to sewage backups. The trial court correctly held that plaintiff had presented sufficient evidence of a "defect" of some kind, whether in design, construction, or mere operation, in the sewage disposal system, sufficient to avoid governmental immunity. See MCL 691.1416(3); *Willet*, 271 Mich App at 52. Thus, RPS was not entitled to summary disposition based on this ground.

Finally, with respect to whether RPS "knew, or in the exercise of reasonable diligence should have known, about the defect," RPS argues, as it did before the trial court, that it had no prior knowledge of any defects in the water filtration system. However, the record reveals that an almost identical sewage event occurred in September 2010, a year before the event that is the subject of this lawsuit. Although RPS denied that its officials had any knowledge of this previous event, there is evidence to indicate otherwise. Specifically, Gary Seger, a Kent County

DPW employee, testified in his deposition that he spoke to Gerry VanCamp, the school's head custodian, in September 2010 following a power outage which resulted in an excessive flow of water being discharged from the middle school into the Davies lift station. During this meeting, which took place at the school, VanCamp accompanied Seger to the boiler room, showed him the water filtration system, explained the problem with the valve system, and indicated that he had manually closed the valves. According to Seger, VanCamp further noted that "they had already talked about [the problem] and were going to do something about it." Seger understood VanCamp to mean that he had spoken to "school officials" about the issue. During his own deposition, VanCamp acknowledged that he was notified about the problem with the school's water filtration system in September 2010, that he manually turned the valves off, and that he subsequently notified someone from the maintenance department of his actions. Based on this evidence, there is a genuine issue of material fact regarding the extent to which RPS was aware of the defect in its water filtration system prior to August 20, 2011. The trial court thus appropriately denied summary disposition on this ground.

Affirmed. As the prevailing party, plaintiff may tax costs. MCR 7.219(A).

/s/ Mark T. Boonstra
/s/ Deborah A. Servitto
/s/ Jane M. Beckering