*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BASMAN AJA,

　　　　　　Plaintiff-Appellant,

and

ALEXANDRA PHYSICAL THERAPY, LLC,

　　　　　　Intervening Plaintiff,

v

PROGRESSIVE MICHIGAN INSURANCE
COMPANY,

　　　　　　Defendant-Appellee.

UNPUBLISHED
January 15, 2026
9:08 AM

No. 364314
Wayne Circuit Court
LC No. 20-016415-NF

## ON REMAND

Before: GARRETT, P.J., and RIORDAN and LETICA, JJ.

PER CURIAM.

　　This action for personal protection insurance (PIP) benefits under the no-fault act, MCL 500.3101 *et seq.*, is before this Court on remand from our Supreme Court. *Aja v Progressive Mich Ins Co*, ___ Mich ___; 25 NW3d 337 (2025). Specifically, in lieu of granting leave to appeal, our Supreme Court vacated this Court's opinion in *Aja v Progressive Mich Ins Co,* unpublished per curiam opinion of the Court of Appeals, issued April 4, 2024 (Docket No. 364314), and remanded to this Court for reconsideration in light of its recently released opinion in *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, ___ Mich ___; ___ NW3d ___ (2025) (Docket Nos. 165537, 165538, and 165964). On remand, this Court is asked to reconsider whether a patient who has assigned his or her claim for PIP benefits to a third party may still file a lawsuit to recover those benefits. For the reasons set forth, we vacate the trial court's order denying plaintiff's motion to reinstate his claim for PIP benefits, and remand to that court for further proceedings.

-1-

## I.  FACTS

On December 17, 2019, plaintiff, Basman Aja, sustained injuries in a motor-vehicle accident.  At the time, plaintiff was insured under a no-fault policy issued by defendant, Progressive Michigan Insurance Company.  As a result of his alleged injuries, plaintiff received medical treatment and services from a number of entities.  Between January and July 2020, plaintiff assigned his rights to recover PIP benefits to two of his medical providers, Physiatry & Rehab Associates, doing business as Columbia Clinic Pain and Spine Institute (Columbia Clinic), and Capital Healthcare, LLC, also known as Capital Surgery Center (Capital Healthcare).

On December 17, 2020, plaintiff filed a complaint to recover PIP benefits from defendant. In his complaint, plaintiff alleged that defendant refused to pay the PIP benefits to which he was entitled, despite plaintiff providing reasonable proof of expenses related to treatments from a number of medical providers because of injuries sustained in the underlying accident.  In November 2021, defendant moved for partial summary disposition under MCR 2.116(C)(8) and (10).  Defendant argued that plaintiff could not pursue a claim for PIP benefits regarding services rendered by Columbia Clinic and Capital Healthcare because he assigned the right to collect payment to these providers.  Defendant asserted that as a consequence of the assignments, plaintiff was no longer the real party in interest.  Defendant added that if plaintiff were permitted to pursue his claim for PIP benefits that he had assigned to the medical providers, defendant might be unjustly forced to pay twice for the medical treatment rendered.  Indeed, defendant represented that Columbia Clinic and Capital Healthcare were pursuing litigation in a separate action to collect PIP benefits from defendant.

In his response to the motion for partial summary disposition, plaintiff argued that while he initially signed assignments with medical providers, Columbia Clinic and Capital Healthcare, those assignments were mutually revoked.  Plaintiff attached to his response two documents, entitled "Recission [sic] and Revocation of Assignment," purporting to revoke and rescind his assignment of PIP benefits to medical providers Capital Healthcare and Columbia Clinic.  Both documents are dated January 21, 2022, the same day plaintiff filed his response to defendant's motion.  Plaintiff did not sign the revocations, but the documents indicate that plaintiff's attorney signed the documents on plaintiff's behalf.  Further, it is unclear who signed the revocation documents on behalf of Columbia Clinic and Capital Healthcare because the documents do not reveal the identity of the individual and the signatures are illegible.  Moreover, the signatures are substantially similar, as if they were signed by the same individual.  Plaintiff further asserted that any assignments signed with any other providers were not knowingly signed and were invalid.

In a reply brief, defendant argued, in relevant part, that it was evident plaintiff did not intend to rescind the assignments as the provided revocations were not actually signed by plaintiff, and they were not executed until plaintiff filed his response to defendant's motion for partial summary disposition.  Defendant further argued that when plaintiff filed his complaint he did not have the right to seek PIP benefits because he assigned that right to the providers and, as a consequence, any amending of a complaint would be futile because the claim for PIP benefits would be barred by the one-year-back rule.

On February 3, 2022, the trial court entered an order granting in part and denying in part defendant's motion for partial summary disposition.  In pertinent part, the trial court's order stated:

IT IS FURTHER ORDERED that any and all claims for medical bills for treatment rendered to Basman Aja by Physiatry and Rehab Associates d/b/a Columbia Clinic Pain & Spine Institute and Capital Healthcare, LLC a/k/a Capital Surgery Center are dismissed with prejudice unless Plaintiff provides this Court with a dismissal order for Physiatry and Rehab Associates, PLLC and Capital Healthcare, PC v Progressive Michigan Insurance Company, Case No 21-008872-CZ, pending before the Honorable John Murphy in Wayne County Circuit Court on or before March 3, 2022.

Apparently, the matter between defendant, Columbia Clinic, and Capital Surgery was not dismissed until June 6, 2022.[1]

On August 1, 2022, plaintiff filed a motion titled "Motion to Reinstate Provider Bills." By this motion, plaintiff acknowledged that the trial court had previously ordered that his claim for PIP benefits could not be pursued unless the action by the medical providers was dismissed by March 3, 2022. Plaintiff represented that the providers sought dismissal of the actions so that he could pursue his suit, but defendant would not cooperate. Plaintiff sought reinstatement of his claim for PIP benefits related to the Columbia Clinic and Capital Surgery treatment because the medical-provider action had been dismissed on June 6, 2022. Plaintiff also asserted that defendant had engaged in fraudulent activities during the present case and the providers' litigation.

In response to plaintiff's motion, defendant argued that, in relevant part, reinstating the claim for PIP benefits related to the Columbia Clinic and Capital Surgery treatment would severely prejudice defendant. Defendant further argued that plaintiff lacked, and continued to lack, standing to pursue payment of the medical providers' bills because of the valid assignments.

At a hearing on August 25, 2022, the trial court denied plaintiff's motion to reinstate his claim for PIP benefits related to the Columbia Clinic and Capital Surgery treatment. In pertinent part, the trial court stated:

> Well, I would respectfully disagree as would [defense counsel].
>
> There was an order that I entered on February 3rd requiring you to do certain things by March 3rd. That was not done.
>
> * * *
>
> Next, there was a second order that required you to file this motion long before now. You failed to meet that deadline. I am not allowing the bills at this late date for all of the reasons that [defense counsel] outlined in his motion.

---

[1] That case was captioned in Wayne Circuit Court as *Physiatry & Rehab Associates v Progressive Mich Ins Co*, LC No. 21-008872-CZ.

Number one, your revocation is not properly signed. It doesn't even identify who signed it.

Secondly, there, he has attached many higher orders from other judges that indicate that this provider has sold his bills. At this late date, discovery is closed. He can't even investigate whether these bills are properly already sold to a third party.

For a multitude of reasons, including the trial is October 3rd and you violated many orders, I am denying your request.

The following day, the trial court entered an order denying plaintiff's motion to reinstate provider bills.

Plaintiff sought leave to appeal the trial court's order denying his motion to reinstate provider bills. This Court denied the application for leave to appeal for failure to persuade the Court of the need for immediate appellate review. *Aja v Progressive Mich Ins Co*, unpublished order of the Court of Appeals, entered November 1, 2022 (Docket No. 363322).

It appears that on November 3, 2022, the parties settled the other claims that plaintiff asserted against defendant for no-fault benefits unrelated to the treatment rendered by Columbia Clinic and Capital Healthcare. Then, on December 6, 2022, the trial court entered a stipulated order of dismissal that dismissed all of plaintiff's claims against defendant and closed the case.

Plaintiff appealed the December 6, 2022 order to this Court, challenging the trial court's February 3, 2022 order granting defendant's motion for partial summary disposition and the August 2025 order denying plaintiff's motion to reinstate provider bills. See *Aja*, unpub op at 1. This Court affirmed, ruling that the trial court did not err when it entered these orders. *Id*. We concluded that when plaintiff commenced this action on December 17, 2020, he was not the real party in interest because his right to recover the unpaid medical bills at issue was divested by virtue of the respective assignments executed in March and July 2020 to Columbia Clinic and Capital Healthcare. *Id*. at 3. Further, this Court concluded that Columbia Clinic and Capital Health, the real parties in interest, did not file their complaint against defendant regarding the underlying PIP benefits until July 22, 2021, more than one year after the services were provided. *Id*. at 3-4. Thus, the claims of the medical providers for PIP benefits were barred by MCL 500.3145(2), the no-fault act's one-year-back rule. *Id*. at 4.

We also concluded that plaintiff's revocations of the assignments were inconsequential, explaining:

Here, while plaintiff timely sued to recover the cost of the medical services, as he filed his complaint on December 17, 2020, he previously had assigned those rights to the medical providers. Plaintiff attempted to remedy the aforementioned circumstances by executing revocation agreements during the course of the trial-court proceedings, which contained language similar to a *nunc pro tunc* clause in an attempt to essentially eradicate the original assignments. However, this Court has denied such "creative solutions," and explained that obtaining revocations from medical providers does not otherwise save a plaintiff's claims because "one must

-4-

be the real party in interest at the time the lawsuit is filed, and a retroactive, or *nunc pro tunc*, revocation may not be used to correct a factual problem that existed when the lawsuit was filed." [*Wallace v Suburban Mobility Auth for Regional Transp*, 347 Mich App 380, 380; 15 NW3d 306 (2023)] (quotation marks and citations omitted). . . . [*Aja,* unpub op at 4.]

With regard to the trial court's findings that plaintiff's revocations were invalid, this Court concluded that the validity of the revocations was irrelevant because when the medical providers revoked their assignments for the benefit of plaintiff to pursue his PIP claim after the litigation began, the medical providers could no longer recover their claims by operation of the one-year-back rule. *Id.* at 5.

Plaintiff sought leave to appeal in our Supreme Court, and it held plaintiff's application in abeyance pending its decisions in *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co* (Docket Nos. 165537-8) (*C-Spine*) and *Wallace v Suburban Mobility Auth for Regional Transp* (Docket No. 165964) (*Wallace*), in which the Court was considering similar legal issues. *Aja v Progressive Mich Ins Co*, 10 NW3d 279 (Mich, 2024).

On July 3, 2025, our Supreme Court issued its opinion in those consolidated cases. See *C-Spine Orthopedics*, ___ Mich ___. Then, on September 26, 2025, in lieu of granting leave to appeal, the Court vacated this Court's opinion in *Aja* and remanded this case to this Court for reconsideration in light of its opinion in *C-Spine Orthopedics*.

## II. STANDARD OF REVIEW

"This Court reviews for abuse of discretion a trial court's decision concerning a motion to reinstate an action." *Wickings v Arctic Enterprises, Inc*, 244 Mich App 125, 138; 624 NW2d 197 (2000). An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). "[T]he issue of whether a plaintiff is the real party in interest is a question of law that we review de novo." *Cannon Twp v Rockford Pub Sch*, 311 Mich App 403, 411; 875 NW2d 242 (2015). We also review de novo a trial court's ruling on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

## III. DISCUSSION

The issue before us on remand—whether plaintiff, a patient who assigned some of his claims for PIP benefits to his medical providers, may still maintain an action to recover those benefits—was explored by our Supreme Court in *C-Spine Orthopedics*. In that opinion, our Supreme Court considered two consolidated cases that presented similar issues under the no-fault act. In the *C-Spine* case, the plaintiff, a medical provider, assigned its claim to recover certain PIP benefits to several medical factoring companies.[2] *C-Spine Orthopedics*, ___ Mich at ___; slip op

---

[2] "Factoring is the commercial practice of converting receivables into cash by selling them at a discount." *C-Spine Orthopedics*, ___ Mich at ___; slip op at 6 n 8 (quotation marks and citation omitted).

at 2. In the *Wallace* case, the plaintiff, a patient, assigned some of her claims for PIP benefits to her medical providers. *Id.* In both cases, after the plaintiffs commenced litigation, the defendant insurers argued that the plaintiffs "could not bring suit because, having assigned away their claims, they were no longer the real parties in interest." *Id.* In response, both plaintiffs argued that because they rescinded or revoked the assignments, their rights to pursue the PIP benefits had been restored. See *id.* at ___; slip op at 9-12. The issues in this appeal are identical to those our Supreme Court considered in *C-Spine Orthopedics*. Accordingly, the Supreme Court's opinion provides the roadmap for resolving the issue presented before us in this appeal.

The Supreme Court first discussed assignments, explaining that "[a]n assignment of rights occurs when the assignor transfers his or her rights or interest to the assignee." *Id.* at ___; slip op at 15 (quotation marks and citation omitted). "[W]here an assignment is such that satisfaction of the judgment obtained by the assignee will discharge the defendant from his obligation to the assignor, for the purpose of the suit the assignee is the real party in interest and may maintain an action in his own name." *Id.* at ___; slip op at 16 (quotation marks and citation omitted). Particularly relevant to this case, the Court noted that "Michigan courts have long recognized that a plaintiff who assigns a claim cannot then bring suit to collect on that claim as that plaintiff is no longer the real party in interest." *Id.* at ___; slip op at 15.

Next, the Supreme Court addressed the relationship between the standing doctrine and the real party in interest rule. *Id.* at ___; slip op at 17. "While the two doctrines function similarly in practice, they are derived from different sources and serve different purposes." *Id.* Standing generally refers to the right of a plaintiff initially to invoke the power of a trial court to adjudicate a claim. *Id.* By contrast, the real party in interest rule is derived from statutes and court rules. *Id.* at ___; slip op at 18. Both MCL 600.2041, a portion of the Revised Judicature Act,[3] and MCR 2.201(B)(1), require that, excluding some enumerated exceptions, an action must be prosecuted in the name of the real party in interest. *Id.* at ___; slip op at 18-19.

Further, relevant to this case, the Court addressed the consequences if an action is not filed by the real party in interest. The Supreme Court reiterated that the real party in interest status is initially assessed at the time the complaint is filed. *Id.* at ___; slip op at 21. Moreover, it acknowledged that failure to bring suit in the name of the real party in interest is a ground for dismissal. *Id.* at ___; slip op at 22. However, the Supreme Court held that "it does not follow— as defendants suggest—that a suit originally filed in the name of someone other than the real party in interest must *necessarily* be dismissed." *Id.* "It is possible, in some circumstance for a plaintiff to cure the defect." *Id.* "A plaintiff may not fix real party in interest defects by unilateral actions taken outside of court . . . ." *Id.* at ___; slip op at 23. Instead, a plaintiff "must take some action in the litigation that would allow the court to assess the effect of the change in parties." *Id.* For example, a plaintiff could file an amended complaint joining or substituting the proper plaintiff, the real party in interest could intervene, or a plaintiff could amend the complaint to reflect that he or she has become the real party in interest through an assignment. *Id.* Any of these actions would permit the trial court "to consider whether the correction of the real party in interest defect may relate back to when the original complaint was filed, or whether the suit will be barred by the

_____

[3] MCL 600.101 *et seq.*

running of the statute of limitations or the one-year-back rule—as well as any other obstacles that might arise." *Id*. at ___; slip op at 23-24.

Regarding whether the corrective action would give rise to any obstacles, the Supreme Court discussed the ability to amend pleadings, the relation-back doctrine, and the interplay between the two. It noted the oft-quoted axiom that leave to amend a pleading should be freely given when justice so requires. *Id*. at ___; slip op at 24, citing MCR 2.118(A)(2). Concomitantly, leave to amend under MCR 2.118 may be denied because of "(1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party by virtue of allowance of the amendment, and (5) futility." *C-Spine Orthopedics*, ___ Mich at ___; slip op at 24 (quotation marks and citations omitted). Nonetheless, under MCR 2.118(D), an amendment that "introduces new facts, a new theory, or even a different cause of action will still relate back, so long as it springs from the same transactional setting as that pleaded originally." *Id*. at ___; slip op at 25 (quotation marks and citation omitted). However, there are some limitations; the relation-back doctrine does not apply to the addition of new parties. *Id*.

After surveying the foregoing legal principles, the Supreme Court then applied these principles to the two cases before it. For our purposes, the *Wallace* case is instructive. Wallace was injured while a passenger on a bus operated by SMART. *Id*. at ___; slip op at 10. Wallace received treatment for her injures from several medical providers and, in each instance, she executed assignments transferring her right to collect PIP benefits to the providers. *Id*. After executing these assignments, Wallace filed suit against SMART seeking payment of PIP benefits for the treatment she received. *Id*. at ___; slip op at 11. SMART moved for summary disposition, arguing that Wallace did not have a legal right to collect PIP benefits because she had assigned that right to her medical providers. *Id*. at ___; slip op at 12. Wallace then obtained "mutual recessions" from all of her providers. *Id*. Thereafter, the trial court denied SMART's motion for summary disposition. *Id*. On interlocutory appeal, this Court reversed. *Wallace v Suburban Mobility Auth for Regional Transp*, 347 Mich App 380, 383; 15 NW3d 306 (2023), aff'd in part, vacated in part, and rev'd in part, *C-Spine Orthopedics*, ___ Mich ___. The Court of Appeals concluded that upon execution of Wallace's assignments, the medical providers became the real parties in interest with respect to the claim for PIP benefits, and only the providers could bring the action to recover benefits. *Wallace*, 347 Mich App at 389. We also rejected Wallace's attempts to save her suit by relying on the "revocations" of her assignments, holding that by the time the rescission agreements were executed, the medical providers no longer had valid claims for benefits by operation of the one-year back rule. *Wallace*, 347 Mich App at 390-391.

After granting leave to appeal, our Supreme Court concluded that while Wallace had standing to file a lawsuit, she lost her real party in interest status when she assigned her claims for PIP benefits to her medical providers. *C-Spine Orthopedics*, ___ Mich at ___; slip op at 27. However, if Wallace could show that she cured her real party in interest defect, her lawsuit could survive. *Id*. at ___; slip op at 28. To resolve this question, the Supreme Court first rejected Wallace's argument that because she and her medical providers mutually rescinded the assignments, this rendered them void *ab initio*, and retroactively made her the real party in interest at the time she filed her complaint. *Id*. at ___; slip op at 33. "[R]escission of a contract subject to litigation does not function by automatic operation of law." *Id*. (citation and quotations marks omitted). "Rather, it is an equitable remedy that the trial court may grant, in its discretion, after

-7-

balancing the equities." *Id.* Further, "[t]hese same equitable considerations apply to a court's decision to extend the effect of a recession on a third party." *Id.* at ___; slip op at 34. "While courts may extend a mutual rescission to third parties as an equitable remedy, Wallace and her medical providers cannot unilaterally declare a 'rescission' and apply its effect retroactively to ongoing litigation with third parties." *Id.* at ___; slip op at 34-35. The Court held that even if Wallace and her providers' claims successfully resulted in a mutual recession of the assignments, the recession could not be given legal effect as to a third party absent a ruling from a court. *Id.* at ___; slip op at 35.

Further, the Supreme Court stressed the importance of a finding that the assignments had been rescinded as opposed to revoked. *Id.* at ___; slip op at 37. A rescission is not the same as a revocation, repudiation, or cancellation of a contract. *Id.* at ___; slip op at 36. Indeed, "[i]f the court recognizes a rescission, an equitable remedy, it is as if the contract at issue never existed." *Id.* A finding that the assignment contracts never existed would be critical when assessing whether a plaintiff's claims were viable in light of the no-fault act's one-year-back rule. See *id.* at ___; slip op at 37. Our Supreme Court explained:

> Here, a rescission would make things as if the first assignments from Wallace to her providers never existed. But because rescission is an equitable remedy, a court would have to balance the equities before granting that relief. The distinction between rescission and revocation matters here. The Court of Appeals, treating the agreements as revocations, recognized that they returned Wallace's rights to sue, but concluded that they did so too late. *Wallace*, 347 Mich App at 389-391. Had it recognized them as rescissions the result might have been different. [*Id.* at ___; slip op at 36-37 (footnote omitted).]

Ultimately, the Court's resolution of Wallace's appeal turned on the fact that the trial court, because of its understanding of the legal issues before it, did not engage in a rescission analysis. *Id.* at ___; slip op at 37. That is, the trial court never balanced the equities. *Id.* Moreover, the Court concluded that because rescission is a remedy that lies in the sound discretion of the court, it was necessary for the trial court to consider this issue in the first instance. *Id.*

Turning to the matter before us, *C-Spine Orthopedics*, particularly the Supreme Court's resolution of the *Wallace* case, is directly on point and controlling. As with the *Wallace* case, Aja, the plaintiff herein, was injured in a motor-vehicle accident. After the accident, plaintiff assigned some of his rights to pursue PIP benefits to two medical providers. On December 17, 2020, a year after his accident, plaintiff filed a complaint to collect PIP benefits. However, as with the plaintiff Wallace, at the time the complaint was filed, plaintiff was not the real party in interest because he had assigned away his rights. Yet, if plaintiff could show that he cured his real party in interest defect, his lawsuit could survive. On January 21, 2022, plaintiff and the two medical providers, Columbia Clinic and Capital Healthcare, allegedly entered into agreements whereby they agreed to revoke and rescind the assignments so as to be in the same position as if the assignments had never been made. Similar to the *Wallace* case, defendant filed a partial motion for summary disposition arguing, in relevant part, that plaintiff was not the real party in interest and had no standing to pursue his claims because he had already assigned his claims to his medical providers. In response, plaintiff relied on the revocation/rescission agreements. Although the documents on their face purport to be a rescission, the trial court treated the documents as revocations and then

found that the revocations were not valid because of the questionable signatures. Given the understanding of the legal issues before it, the trial court did not engage in a rescission analysis. Further, the Supreme Court in *C-Spine Orthopedics* emphasized that because rescission in a remedy that rests within the sound discretion of the trial court, "the trial court ought to consider this issue in the first instance." *C-Spine Orthopedics*, ___ Mich at ___; slip op at 37. Accordingly, we vacate the trial court's order denying plaintiff's motion to reinstate his claim for PIP benefits, and remand to that court for further proceedings consistent with our Supreme Court's opinion in *C-Spine Orthopedics*.

## IV. CONCLUSION

We vacate the trial court's order denying plaintiff's motion to reinstate his claim for PIP benefits, and remand to that court for further proceedings. On remand, the trial court should "balance the equities and determine whether equitable rescission is warranted under the facts of this case" and whether the real party in interest defect that existed at the filing of the complaint can be cured. *Id.* at ___; slip op at 38-39. We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Michael J. Riordan
/s/ Anica Letica