*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PORSCHA SHANTEL SHARP,

        Plaintiff-Appellant,

and

ISPINE PLLC,

        Intervening Plaintiff,

v

SAMANTHA MARIE TRACHT and RONALD R. HRIBAL,

        Defendants,

and

PROGRESSIVE MARATHON INSURANCE COMPANY,

        Defendant-Appellee.

UNPUBLISHED
August 19, 2025
11:16 AM

No. 369607
Wayne Circuit Court
LC No. 19-015431-NI

Before: BORRELLO, P.J., and, M. J. KELLY and TREBILCOCK, JJ.

PER CURIAM.

In this automobile negligence case, plaintiff appeals by right the stipulated order of dismissal entered by the trial court, but plaintiff specifically challenges an earlier adverse summary disposition ruling. For the reasons set forth in this opinion, we vacate the trial court's summary disposition ruling challenged by plaintiff on appeal and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

-1-

This action arises out of a September 1, 2019 automobile accident. Plaintiff alleged that she was driving through an intersection with the right-of-way when a vehicle driven by defendant Samantha Tracht[1] and owned by defendant Ronald Hribal ran a red light and collided with plaintiff's vehicle, causing her injuries. Plaintiff filed this action on November 18, 2019. As relevant to this appeal, plaintiff alleged that she was covered under an insurance policy with defendant Progressive Marathon Insurance Company and that Progressive had unreasonably refused to pay no-fault benefits to which plaintiff was entitled. Plaintiff sought recovery of the benefits she alleged she was owed.[2]

On March 23, 2021, Progressive moved for partial summary disposition with respect to the bills of (1) Capital Surgery Center and (2) Spine and Health, alleging that plaintiff lacked standing regarding these bills because of assignments plaintiff had executed. Progressive alleged that plaintiff had recently produced a new bill from Capital Surgery Center for $248,750, which represented 75% of the alleged outstanding no-fault benefits. Furthermore, Progressive alleged that plaintiff had executed assignments of rights to both Capital Surgery Center and Spine and Health, that those entities had in turn sold those account receivables to medical funding company National Health Finance, and that plaintiff thus had no legal right to claim recovery for those bills in the present action. Progressive argued that plaintiff was not the real party in interest relative to those bills and that those claims must therefore be dismissed for lack of standing. Progressive filed another similar motion for summary disposition on March 26, 2021, alleging that plaintiff's claims also included bills from other medical providers to which plaintiff had executed assignments. Progressive argued that these claims must also be dismissed for lack of standing.

The trial court granted Progressive's motion for partial summary disposition with respect to the Capital Surgery Center and Spine and Health bills. The court concluded that plaintiff lacked standing to assert these claims because she had assigned her rights to the medical providers. The trial court acknowledged that the actual assignments were not in the record but relied instead on the evidence Progressive had produced that the accounts were sold to National Health Finance. In a separate order, the trial court also granted Progressive's additional motion for partial summary disposition based on the other assignments because plaintiff failed to respond to that motion.

In an order, this Court subsequently reversed the trial court's order granting summary disposition regarding the Capital Surgery Center and Spine and Health bills, stating as follows:

> Pursuant to MCR 7.205(E)(2), in lieu of granting the application, the trial court's September 8, 2021 order is REVERSED, and the matter REMANDED for entry of an order denying the motion for summary disposition. The underlying factual basis of the summary disposition motion filed by defendant Progressive Marathon Insurance Company (Progressive) was that plaintiff assigned her rights

---

[1] Samantha Tracht is also referred to in the record as Samantha Hribal. Although orginally named as defendants in this action, both Samantha and Ronald were dismissed from the action by stipulation of the parties.

[2] After Ispine, PLLC, intervened, its claims against Progressive were dismissed by stipulated order pursuant to a settlement agreement.

to certain no-fault benefits to others. However, no actual assignments were produced. Nor would it be appropriate to shift the burden to plaintiff to prove that she did not assign her rights to another. Unless Progressive can prove otherwise, plaintiffs standing to pursue the benefits at issue is established by the fact that she was billed for the underlying medical services. See, e.g., MCL 500.3112 ("Personal protection insurance benefits are payable to . . . an injured person . . . "). Progressive failed to meet its initial burden of either providing affirmative evidence negating an essential element of the claim, or demonstrating that plaintiff could not establish an essential element of her claim. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016). [*Sharp v Tracht*, unpublished order of the Court of Appeals, entered February 17, 2022 (Docket No. 359157) (ellipses in original).]

On remand, Progressive filed a renewed motion for partial summary disposition under MCR 2.116(C)(10) with respect to plaintiff's claim premised on medical services provided by Capital Surgery Center. Progressive argued that plaintiff had executed an assignment of her rights to pursue no-fault benefits to Capital Surgery Center on November 8, 2019, and that plaintiff therefore did not have standing to pursue recovery of the amount billed by Capital Surgery Center. Progressive further argued that plaintiff could not save her claim by obtaining a "revocation" from Capital Surgery Center because the November 8 assignment indicated that it was irrevocable, plaintiff had already executed the assignment before she filed the instant action, and Capital Surgery Center did not have any interest that it could assign back to plaintiff because it had already sold the account receivable to National Health Finance. Furthermore, Progressive argued that even if the assignment were revocable, recovery was now barred by the one-year-back rule. Progressive attached to the motion a "Notice of Sale and Assignment" evidencing the December 12, 2019 sale of a $248,750 account from provider "Capital Healthcare" to "National Health" that was based on services provided to plaintiff on November 6, 2019. Progressive also apparently attached the assignment that plaintiff executed in favor of Capital Surgery Center, but this particular document in the lower court record is almost entirely black and impossible to read.

In response, plaintiff argued that Capital Surgery Center and National Health Finance had mutually rescinded the respective assignments, rendering them void ab initio. Plaintiff advanced the same argument regarding the assignments involving Spine and Health. Plaintiff contended that she therefore had standing to pursue her claims. Plaintiff attached documents purportedly evidencing these rescissions to her response. However, none of the documents were fully executed by all parties to the purported rescissions.[3] Plaintiff subsequently submitted supplemental exhibits that were fully executed versions of the relevant mutual rescissions, each of which included dates of execution on various days in late April or early May 2023.

The trial court held a hearing on the motion, heard oral argument consistent with the parties' written filings, and took the matter under advisement. The trial court entered a written

---

[3] Some documents were signed by only one of the two parties, and some were not signed by any party.

order on May 16, 2023[4], granting Progressive's motion for summary disposition, reasoning as follows:

> A valid assignment by definition entails "the assignor manifesting an intent to transfer and not retain any control or any power of revocation." *Burkhardt v Bailey*, 260 Mich App 636, 655; 680 NW2d 453 (2004). In the case at hand, this Court has previously found and continues to find Plaintiff assigned providers are the real party in interest and Plaintiff may not sue to recover those benefits assigned. Any revocation of assignments produced by Plaintiff are too late for Plaintiff to have included the bills from Capital Surgery as they did not have this right at the time of filing.
>
> Furthermore, no supplemental pleadings have been filed in this case and any additional claims Plaintiff would wish to make would be barred by the one year back rule MCL 500.3145.

This order also provided that it was not a final order and did not close the case. The trial court denied plaintiff's motion for reconsideration. On January 31, 2024, the trial court entered a stipulated order of dismissal with prejudice. The order stated that pursuant to the parties' stipulation, plaintiff's complaint was dismissed in its entirety with prejudice and that the order was a final order closing the case.

Plaintiff claimed an appeal by right in this Court, and this Court entered an order on March 4, 2024, dismissing the appeal for lack of jurisdiction as follows:

> The claim of appeal is DISMISSED for lack of jurisdiction because the January 31, 2024 judgment is a consent judgment and does not include any provision allowing for an appeal as to certain issues. A party that agrees to the entry of a judgment is not an aggrieved party and cannot appeal the judgment. MCR 7.203(A); *Sandoval v Farmers Insurance Exchange*, ___Mich App___; ___NW3d___ (Docket Nos. 361166 and 361176); slip op at 4. [*Sharp v Tracht*, unpublished order of the Court of Appeals, entered March 4, 2024 (Docket No. 369607.]

This Court denied reconsideration of this order. *Sharp v Tracht*, unpublished order of the Court of Appeals, entered April 18, 2024 (Docket No. 369607).

Plaintiff applied for leave to appeal in the Supreme Court on May 23, 2024. On August 8, 2024, plaintiff filed a motion in the Supreme Court requesting remand to the Court of Appeals for plenary consideration of the summary disposition issue regarding plaintiff's standing in light of the assignments and rescissions of those assignments. Plaintiff indicated that the parties agreed that plaintiff had the right to have her appeal heard on that issue and that the trial court had entered an order on July 19, 2024, pursuant to the agreement of the parties, which was intended to cure the

---

[4] The order was filed on May 16, 2023, although it was signed on May 15. For purposes of consistency we refer to it as the May 16, 2023 order.

perceived defect in the trial court's January 31, 2024 order. Plaintiff attached the trial court's July 19 order, which stated in relevant part that it was intended to cure the inadvertent procedural mistake and omission in the January 31, 2024 order to allow plaintiff to appeal limited issues stemming from the trial court's May 16, 2023 summary disposition ruling as the parties had agreed in stipulating to the January 31, 2024 order of dismissal.

Our Supreme Court subsequently issued the following order on December 2, 2024:

> On order of the Court, in light of the parties' agreement to the relief granted herein, the application for leave to appeal the March 4, 2024 order of the Court of Appeals and the motion to remand are considered and, pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we VACATE the order of the Court of Appeals and GRANT the motion to remand this case to that court for plenary consideration in light of the July 19, 2024 order of the Wayne Circuit Court. On remand, the Court of Appeals must also consider whether the Wayne Circuit Court had jurisdiction under *People v Washington*, 508 Mich 107 (2021) to enter the July 19, 2024 order. See also *People v Scott*, ___ Mich ___ (June 3, 2024) (Docket No. 164790); MCR 7.208(A)(2). The motion for stay is DENIED. [*Sharp v Tracht*, ___ Mich ___; 13 NW3d 632 (2024).]

## II. JURISDICTION

As directed by our Supreme Court, we must first address the effect of the July 19, 2024 order on our appellate jurisdiction. "A defect in the court's subject-matter jurisdiction can be raised at any time . . . ." *People v Johnson*, 345 Mich App 51, 58; 3 NW3d 846 (2022). This Court reviews the question whether it has jurisdiction to hear an appeal de novo as a question of law. *Jaber v P & P Hospitality, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363572); slip op at 3.

The question before us is whether this Court has jurisdiction over an appeal from a stipulated judgment where the plaintiff-appellant challenges an adverse trial court ruling that preceded the entry of the stipulated judgment, but the stipulated judgment did not expressly preserve the plaintiff-appellant's right to appeal the earlier trial court order. Both parties in this case initially contend that this Court should simply rule in the affirmative under *Jaber*, ___ Mich App at ___; slip op at 2, which held that "an appellant may raise issues arising out of an earlier order relating to one party, even if the appellant has failed to reserve the right to appeal in a subsequent, stipulated order of dismissal as to another party." The parties also believe that the question posed by the Supreme Court regarding the trial court's jurisdiction to enter the July 19, 2024 order is moot as a consequence.

In *Jaber*, this Court convened a special conflicts panel to resolve a conflict between the previous opinion in that case and this Court's opinion in *Sandoval v Farmers Ins Exch*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 361166). *Jaber*, ___ Mich App at ___; slip op at 1. The *Sandoval* panel had held that this Court lacks jurisdiction over an appeal from a stipulated order of dismissal that did not contain a reservation of the right to appeal an earlier order relating to another party, and the previous *Jaber* panel had followed *Sandoval* "only because it was compelled to do so by MCR 7.215(J)(1)." *Jaber*, ___ Mich App at ___; slip op at 1-2. The special

-5-

conflicts panel in *Jaber* adopted the position of the initial *Jaber* panel and rejected the conclusion of the *Sandoval* panel. *Id*. at ___; slip op at 11-12. Our Supreme Court subsequently vacated this Court's opinion in *Sandoval* in light of the decision of the special conflicts panel in *Jaber*. *Sandoval v Farmers Ins Exch*, ___ Mich ___; 18 NW3d 300, 300-301 (2025).

In this case, however, plaintiff sought reversal of the trial court's May 16, 2023 order granting summary disposition to Progressive by claiming an appeal from a subsequent stipulated order between plaintiff and Progressive entered by the trial court on January 31, 2024. Thus, unlike the factual circumstances in *Jaber*, both the earlier order challenged by plaintiff and the stipulated order involved the same parties. The special conflicts panel in *Jaber* expressly declined to answer the precise question that is now presented before this Court, stating in a footnote that "[f]or purposes of this appeal, we need not decide whether an appellant may raise issues arising out of an earlier order if the appellant, while failing to reserve the right to appeal, subsequently enters into a stipulated order of dismissal as to the same party that was the subject of the earlier order." *Jaber*, ___ Mich App at ___; slip op at 2 n 3.

This question that was left open in *Jaber* is now squarely before this Court, along with the related question of the effect—if any—of the parties' subsequent attempt through the July 19, 2024 stipulated order to cure any failure to reserve the right to appeal the earlier order. "The question of jurisdiction is always within the scope of this Court's review," *Walsh v Taylor*, 263 Mich App 618, 622; 689 NW2d 506 (2004), and this Court will address the matter of its own jurisdiction when such questions arise, even if the issue is not disputed or has not been accurately framed by the parties, see *id*. at 621-622.

Pursuant to Const 1963, art 6, § 10, "The jurisdiction of the court of appeals shall be provided by law and the practice and procedure therein shall be prescribed by rules of the supreme court." Under MCL 600.308(1), the court of appeals generally has "jurisdiction on appeals from all final judgments and final orders from the circuit court . . . as those terms are defined by law and supreme court rule," and a "final judgment or final order described in this subsection is appealable as a matter of right."[5] Additionally, because MCL 600.309[6] also grants "our Supreme Court broad authority to promulgate rules that permit appeals to this Court and to determine whether those appeals would be as of right or by leave granted," the jurisdiction of this Court is "generally

---

[5] There are exceptions to this grant of jurisdiction in MCL 600.308(2) (orders reviewable by application for leave granted) and MCL 600.308(3) (orders not appealable), but those exceptions are not at issue in this appeal.

[6] MCL 600.309 provides:

> Except as provided in section 308, all appeals to the court of appeals from final judgments or decisions permitted by this act shall be a matter of right. All other appeals from other judgments or orders to the court of appeals permitted by statute or supreme court rule shall be by right or by leave as provided by the statute or the rules promulgated by the supreme court.

ascertained by reference to our Supreme Court's rules." *Chen v Wayne State Univ*, 284 Mich App 172, 192; 771 NW2d 820 (2009).

Here, plaintiff claimed an appeal by right from the trial court's January 31, 2024 order. Pursuant to MCR 7.203(A), this Court

has jurisdiction of an appeal of right filed by an aggrieved party from the following:

(1) A final judgment or final order of the circuit court, or court of claims, as defined in MCR 7.202(6), except a judgment or order of the circuit court

(a) on appeal from any other court or tribunal;

(b) in a criminal case in which the conviction is based on a plea of guilty or nolo contendere;

An appeal from an order described in MCR 7.202(6)(a)(iii)-(v) is limited to the portion of the order with respect to which there is an appeal of right.

(2) A judgment or order of a court or tribunal from which appeal of right to the Court of Appeals has been established by law or court rule.

According to MCR 7.202(6)(a), a "final judgment" or "final order" in a civil case means:

(i) the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties, including such an order entered after reversal of an earlier final judgment or order;

(ii) an order designated as final under MCR 2.604(B);

(iii) in a domestic relations action, a postjudgment order that, as to a minor, grants or denies a motion to change legal custody, physical custody, or domicile;

(iv) a postjudgment order awarding or denying attorney fees and costs under court rule or other law;

(v) an order denying governmental immunity to a governmental party, including a governmental agency, official, or employee under MCR 2.116(C)(7) or an order denying a motion for summary disposition under MCR 2.116(C)(10) based on a claim of governmental immunity; or

(vi) in a foreclosure action involving a claim for remaining proceeds under MCL 211.78t, a postjudgment order deciding the claim.

In turn, MCR 2.604 provides as follows:

(A) Except as provided in subrule (B), an order or other form of decision adjudicating fewer than all the claims, or the rights and liabilities of fewer than all the parties, does not terminate the action as to any of the claims or parties, and the

-7-

order is subject to revision before entry of final judgment adjudicating all the claims and the rights and liabilities of all the parties. Such an order or other form of decision is not appealable as of right before entry of final judgment. A party may file an application for leave to appeal from such an order.

(B) In receivership and similar actions, the court may direct that an order entered before adjudication of all of the claims and rights and liabilities of all the parties constitutes a final order on an express determination that there is no just reason for delay.

Hence, the definition in MCR 7.202(6)(a)(i) is the only definition of a final judgment or final order that is implicated under the facts of this case. Plaintiff challenges the trial court's ruling granting summary disposition in the May 16, 2023 order. This order was limited to plaintiff's claim predicated on bills from Capital Surgery, and this order expressly stated that it was not a final order. The trial court's designation was consistent with the court rules because it adjudicated fewer than all the claims. MCR 2.604; MCR 7.202(6)(a)(i). The January 31, 2024 order, however, dismissed the rest of plaintiff's complaint and was the first order that disposed of all the claims and adjudicated the rights and liabilities of all the parties, thus making it a final order. MCR 7.202(6)(a)(i).

Ordinarily, if "a party has claimed an appeal from a final order, the party is free to raise on appeal issues related to other orders in the case." *Bonner v Chicago Title Ins Co*, 194 Mich App 462, 472; 487 NW2d 807 (1992). A party "cannot appeal from a consent judgment, order or decree" because "neither party can complain of a consent order, for the error in it, if there is any, is their own, and not the error of the court." *Dora v Lesinski*, 351 Mich 579, 582; 88 NW2d 592 (1958) (quotation marks and citation omitted). However, our Supreme Court has also recognized that "an appeal of right is available from a consent judgment in which a party has reserved the right to appeal a trial court ruling." *Travelers Ins v Nouri*, 456 Mich 937, 937; 575 NW2d 561 (1998).

In *Jaber*, this Court held that "an appellant may raise issues arising out of an earlier order relating to one party, even if the appellant has failed to reserve the right to appeal in a subsequent, stipulated order of dismissal as to another party." *Jaber*, ___ Mich App at ___; slip op at 2. As previously explained, this holding does not directly address the question presented in the current case, which was a question specifically left open by the conflict panel in *Jaber*. *Id*. at ___ n 3; slip op at 2 n 3. In reaching its holding in *Jaber*, the conflict panel reasoned that the plaintiff-appellant was "aggrieved" by the earlier summary disposition motion granted in favor of one defendant— which was not appealable by right because it did not dispose of the claims against the other defendant—and that the plaintiff-appellant "remained aggrieved" when the trial court subsequently entered the stipulated final order dismissing the remaining defendant. *Id*. at ___; slip op at 9. The conflict panel in *Jaber* further reasoned that the defendant dismissed in the first order was not a party to the stipulated order and therefore "should not be permitted to dictate that plaintiff was required to include a reservation of the right to appeal the earlier ruling . . . ." *Id*. at ___; slip op at 10. Finally, the Court observed that parties are not authorized to stipulate either to granting a court jurisdiction it does not have *or to depriving* a court of its lawful jurisdiction. *Id*. Recognizing the tension in this area of jurisdictional law, this Court stated:

We agree that a reservation of rights in a stipulated order is helpful, as it indicates that a party intends to challenge an earlier ruling. Simply put, a reservation of the right to appeal gives notice to the other parties. As noted by JUDGE O'BRIEN in the *Sandoval* dissent, a reservation "signals that the party is consenting to the judgment but not to the trial court's actions that the party seeks to contest on appeal." *Sandoval*, __ Mich App at ___ (O'BRIEN, J. dissenting); slip op at 7. A reservation also serves as an indicator, in the initial review of this Court's jurisdiction over a claim of appeal, that the party did not consent to the issue sought to be appealed. Nevertheless, even if a right to appeal is not reserved, the appellant's arguments on appeal will reflect whether the issues appealed relate to the stipulated order itself, which should be precluded, or to an earlier interlocutory order as to another party, which should not be precluded. [*Id.*]

The conflict panel in *Jaber* explained that its holding was not contrary to the general rule that "a party cannot stipulate to a matter and then complain on appeal about the stipulated matter" because the plaintiff was arguing that "the error was inherent in the earlier order granting summary disposition" and was "not asserting error in the stipulated order." *Id.* at ___; slip op at 11.

It appears that the same reasoning would apply in the instant case: plaintiff is clearly challenging only the trial court's earlier summary disposition ruling in Progressive's favor and is not claiming error in the stipulated order that essentially abandoned the rest of plaintiff's claims.

However, we recognize that there are also good reasons to require a reservation of appellate rights in a stipulated order where, as in this case, both the earlier summary disposition order and the stipulated order involve the same parties. In such a scenario, the stipulated order appears more like a settlement of the case, and allowing the potential for a plaintiff to unexpectedly challenge an earlier order without notice could encourage gamesmanship. It thus makes sense to require the parties under these circumstances to accurately set forth their full agreement, including any agreed upon reservation of appellate rights, in a stipulated order.

Nonetheless, we need not resolve this somewhat thorny issue in this case because this Court still has jurisdiction over this appeal for an independently sufficient reason even if we were to conclude that the failure to include a reservation of appellate rights in the January 31, 2024 consent judgment prevented plaintiff from claiming an appeal by right from that order.

Our Supreme Court has instructed this Court to consider the trial court's July 19, 2024 order that was entered while plaintiff's application for leave to appeal in the Supreme Court was pending. The trial court's July 19, 2024 order stated that the parties appeared before the trial court "for a conference on July 10, 2024, regarding the January 31, 2024, Order of Dismissal previously filed in this matter following a settlement between the parties which contained an express reservation of appellate rights permitting Plaintiff limited appellate rights to appeal limited issues pertaining to [the trial court's] May 16, 2023, Order Granting Defendant Progressive's Motion for Summary Disposition . . ." In its July 19 order, the trial court ordered in pertinent part as follows:

> **IT IS HEREBY ORDERED AND ADJUDGED** that the January 31, 2024, Stipulated Order of Dismissal is hereby set aside in order to be modified and corrected pursuant to the terms of this Order;

**IT IS FURTHER ORDERED AND ADJUDGED** that Plaintiff's Complaint against Defendant, Progressive Marathon Insurance Company is hereby dismissed, in its entirety, with prejudice and without costs or attorney fees to either party;

**IT IS FURTHER ORDERED AND ADJUDGED** that notwithstanding the terms of this Amended and Corrected Stipulated Order of Dismissal With Prejudice, the Plaintiff shall each have a reservation of rights to appeal this Court's January 31, 2024, Order of Dismissal With Prejudice which dismissed the Capital Surgical Center and Spine & Health Bills from the pending action, and that should Plaintiff timely exercise such appellate remedies to a court of higher jurisdiction, that Defendant, Progressive retains and reserves all rights to respond to such appeal and to seek to have this Court's ruling affirmed on appeal;

*This is a final Order that closes this case.*

*This Order supersedes the Dismissal Order of the Court dated January 31, 2024.*

This order contains the reservation of appellate rights that was lacking in the original January 31, 2024 order, and "an appeal of right is available from a consent judgment in which a party has reserved the right to appeal a trial court ruling." *Travelers Ins*, 456 Mich at 937. However, as instructed by our Supreme Court, this Court must next consider whether the trial court had jurisdiction under *People v Washington*, 508 Mich 107; 972 NW2d 767 (2021), and *People v Scott*, 513 Mich 180; 15 NW3d 159 (2024), to enter this curative order.

In *Washington*, the defendant was convicted of multiple crimes, including second-degree murder. *Washington*, 508 Mich at 114. On appeal, this Court affirmed the defendant's convictions but remanded for resentencing. *Id*. at 114-115. The defendant applied for leave to appeal in the Michigan Supreme Court, and the trial court resentenced the defendant while his application was still pending in the Supreme Court. *Id*. at 115. The Supreme Court subsequently denied the defendant's application for leave to appeal. *Id*. Years later, the defendant filed a second motion for relief from judgment in which he challenged his sentences on the ground that the trial court's resentencing order was invalid for lack of jurisdiction because his application was still pending in the Supreme Court when he was resentenced. *Id*. at 116. The trial court concluded that it had lacked jurisdiction when it resentenced the defendant and therefore granted the defendant's motion, vacated his sentences, and ordered resentencing. *Id*.

The Michigan Supreme Court likewise held that the trial court "lacked subject-matter jurisdiction when it resentenced [the] defendant pursuant to the Court of Appeals order while [the] defendant's application for leave to appeal was pending in [the Supreme] Court." *Id*. at 129. Our Supreme Court explained that the defendant's appeal from the original judgment of sentence "divested the trial court of subject-matter jurisdiction over those aspects of the case involved in the appeal" and that when the Court of Appeals issued its judgment that included a remand for resentencing, "jurisdiction remained with the appellate courts until [the Supreme] Court's disposition of [the] defendant's application for leave to appeal the Court of Appeals' judgment." *Id*. at 126-127, citing *People v George*, 399 Mich 638, 640; 250 NW2d 491 (1977); MCR

7.215(F)(1)(a); MCR 7.305(C)(7)(a).[7] Our Supreme Court concluded that the trial court's resentencing order entered without subject-matter jurisdiction was void, and the Court remanded for resentencing. *Washington*, 508 Mich at 132.

In *Scott*, our Supreme Court addressed this issue in the context of interlocutory appeals. The Court succinctly summarized the most pertinent facts and its holding at the beginning of its opinion as follows:

> During these proceedings, defendant applied in this Court for leave to appeal a Court of Appeals judgment that remanded the case to the trial court for further proceedings. Under those circumstances, an automatic stay of the remand proceedings was in place that barred the trial court from addressing aspects of that interlocutory appeal. [MCR 7.305(C)(6)(a).] The significant question presented in this case is whether a trial court is divested of subject-matter jurisdiction over a case during such an interlocutory appeal. We hold that the trial court was barred by our court rules from holding a trial during which evidence disputed in the pending interlocutory appeal was admitted. [MCR 7.305(C)(6)(a).]
>
> Notwithstanding this error, we hold that the trial court's failure to adhere to the automatic stay mandated by MCR 7.305(C)(6)(a) was a procedural error that did not deprive the court of subject-matter jurisdiction. [*Scott*, 513 Mich at 185-186.]

Our Supreme Court concluded that a trial court was not divested of subject-matter jurisdiction during the pendency of interlocutory appeal proceedings because the Michigan Constitution provides criminal defendants with the *right* to an appeal from a final order but does not provide a *right* to an *interlocutory* appeal. *Id.* at 206-208. The Court further explained that "[t]he mechanics of interlocutory appeals are entirely the product of the court rules promulgated by this Court pursuant to our constitutional imperative to 'establish, modify, amend and simplify

---

[7] In *George*, the Supreme Court held that until the pending application for leave to appeal in the Supreme Court was resolved, jurisdiction had not revested in the circuit court. *George*, 399 Mich at 640. MCR 7.215(F)(1)(a) provides that "[u]nless otherwise ordered by the Court of Appeals or the Supreme Court or as otherwise provided by these rules, . . . the Court of Appeals judgment is effective after the expiration of the time for filing an application for leave to appeal in the Supreme Court, or, if such an application is filed, after the disposition of the case by the Supreme Court . . . ." This Court rule was substantively the same when *Washington* was decided. See *Washington*, 508 Mich at 120 ("Under MCR 7.215(F)(1)(a), 'the Court of Appeals judgment is effective after the expiration of the time for filing an application for leave to appeal to the Supreme Court, or, if such an application is filed, after the disposition of the case by the Supreme Court[.]' ") (alteration in original). The Supreme Court in *Washington* also cited MCR 7.305(C)(7)(a). This provision is now contained in MCR 7.305(6)(a) and generally provides that if a party timely appeals a Court of Appeals decision that remands to a lower court for further proceedings, and the Court of Appeals decision is a "judgment" under MCR 7.215(E)(1), then the "application for leave to appeal stays proceedings on remand unless the Court of Appeals or the Supreme Court orders otherwise."

-11-

the practice and procedure in all courts of this state.' " *Id*. at 211, quoting Const 1963, art 6, § 5. Noting that "a defendant remains entitled to constitutional review based on a final order," our Supreme Court stated that "[i]nterlocutory appeals simply do not implicate our Constitution and therefore remain outside the scope of jurisdictional concern." *Scott*, 513 Mich at 208.

Of particular relevance to the jurisdictional issue in the present case, the Michigan Supreme Court explained in *Scott* that a "final order is the demarcation that divests a trial court of its general 'subject-matter jurisdiction' and permits a criminal defendant to exercise his or her constitutional right to an appeal" and that "[w]hen a trial court enters a final order, it relinquishes its general power to find facts and render conclusions of law affecting the final order *unless permitted by court rule or by order from courts exercising appellate jurisdiction*." *Id*. at 207-208 (emphasis added). In contrast, our Supreme Court held that "interlocutory appeals do not divest the trial court of its subject-matter jurisdiction" because a "trial court's error committed while an interlocutory appeal is pending has no effect on the trial court's general subject-matter jurisdiction over the case" and "such error is preserved for review by courts exercising appellate jurisdiction upon entry of the trial court's final order." *Id*. at 186.

Here, the question is whether the trial court had subject-matter jurisdiction, while plaintiff's application for leave to appeal in the Michigan Supreme Court was pending, to enter the July 19, 2024 order correcting its January 31, 2024 stipulated order of dismissal to include the reservation of appellate rights relative to the earlier May 16, 2023 summary disposition order. The January 31, 2024 order from which plaintiff originally appealed was a final order, not an interlocutory order, so the trial court's subject-matter jurisdiction is in issue. *Washington*, 508 Mich at 126-127, 129; *Scott*, 513 Mich at 206-208, 212. However, as our Supreme Court explained in *Scott*, a final order divests the trial court "of its general 'subject-matter jurisdiction' " and "its general power to find facts and render conclusions of law affecting the final order *unless permitted by court rule or by order from courts exercising appellate jurisdiction*." *Scott*, 513 Mich at 207-208 (emphasis added).

MCR 7.208(A) provides in relevant part as follows:

(A) Limitations. After a claim of appeal is filed or leave to appeal is granted, the trial court or tribunal may not set aside or amend the judgment or order appealed from except

(1) by order of the Court of Appeals,

(2) *by stipulation of the parties*, [or]

\* \* \*

(4) as otherwise provided by law.

Thus, although plaintiff's application for leave to appeal was pending in our Supreme Court, the trial court was still permitted under MCR 7.208(A)(2) to amend the order appealed from "by stipulation of the parties." *Scott*, 513 Mich at 207-208. Here, the parties agree that the July 19, 2024 order was a stipulated order. The trial court therefore had jurisdiction to enter this order. *Id*.; MCR 7.208(A)(2). The July 19, 2024 order expressly states that it reserves plaintiff's right to

appeal the limited issue regarding the trial court's earlier May 16, 2023 order granting Progressive's summary disposition motion and dismissing Capital Surgical Center and Spine and Health from the action. On this basis, this Court has jurisdiction over this appeal. *Travelers Ins*, 456 Mich at 937.

## III. SUMMARY DISPOSITION

We now turn to the substantive issue regarding the trial court's summary disposition ruling. The trial court explained the basis for its ruling granting Progressive's motion for summary disposition on the claims at issue as follows:

> A valid assignment by definition entails "the assignor manifesting an intent to transfer and not retain any control or any power of revocation." *Burkhardt v Bailey*, 260 Mich App 636, 655; 680 NW2d 453 (2004). In the case at hand, this Court has previously found and continues to find Plaintiff assigned providers are the real party in interest and Plaintiff may not sue to recover those benefits assigned. Any revocation of assignments produced by Plaintiff are too late for Plaintiff to have included the bills from Capital Surgery as they did not have this right at the time of filing.

> Furthermore, no supplemental pleadings have been filed in this case and any additional claims Plaintiff would wish to make would be barred by the one year back rule MCL 500.3145.

On appeal, plaintiff argues that the trial court erred by dismissing her claims based on the court's conclusion that the mutual revocations of assignment did not cure the fact that plaintiff was not the real party in interest when she filed this action.

This Court reviews a trial court's summary disposition ruling de novo. *Cannon Twp v Rockford Pub Sch,* 311 Mich App 403, 410; 875 NW2d 242 (2015). When considering a motion under MCR 2.116(C)(10), "a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion" and the motion "may only be granted when there is no genuine issue of material fact." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). The issue of standing is reviewed de novo as a question of law. *League of Women Voters of Mich v Secretary of State*, 506 Mich 561, 574; 957 NW2d 731 (2020). Whether a plaintiff is the real party in interest also presents a question of law that this Court reviews de novo. *Cannon Twp*, 311 Mich App at 411.

Resolution of the issue on appeal is governed by our Supreme Court's recent decision in *C-Spine Orthopedics, PLLC v Progressive Michigan Ins Co*, ___ Mich ___; ___ NW3d ___ (2025) (Docket Nos. 165537, 165538, and 165964). In *C-Spine*, our Supreme Court resolved two consolidated cases with factual circumstances similar to those presented in the instant case. In the first case, *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, C-Spine had provided medical treatment to Jose Cruz-Muniz and Sandra Cruz after they were injured in a car accident, and C-Spine obtained assignments from Jose and Sandra of their rights to claim personal protection insurance (PIP) benefits. *C-Spine*, ___ Mich at ___; slip op at 5-6. Jose and Sandra were covered by Progressive Michigan Insurance Company under a no-fault insurance policy. *Id*. at ___; slip

op at 5. C-Spine, in turn, sold its accounts receivable—including the claims of Jose and Sandra—to factoring companies. *Id*. at ___; slip op at 6-7.

C-Spine subsequently sued Progressive to collect Jose and Sandra's unpaid PIP benefits, and Progressive moved for summary disposition on the ground that "C-Spine lacked standing to seek payment of Jose and Sandra's benefits because it had assigned its rights to those benefits to the factoring companies, and therefore, C-Spine was not the real party in interest." *Id*. at ___; slip op at 7-8. Although C-Spine produced counter-assignments from the factoring companies purporting to assign the rights to Jose and Sandra's PIP benefits back to C-Spine, they were executed after C-Spine had filed its lawsuit against Progressive. *Id*. at ___; slip op at 8. The trial court granted summary disposition to Progressive because it concluded that C-Spine lacked standing when it filed the action. *Id*. at ___; slip op at 9.

In the second of the consolidated cases, *Wallace v Suburban Mobility Auth for Regional Transp*, the plaintiff was injured while riding on a bus operated by the Suburban Mobility Authority for Regional Transportation (SMART). *Id*. at ___; slip op at 10. The plaintiff received medical treatment and assigned her rights to collect PIP benefits to her medical providers. *Id*. Nevertheless, the plaintiff subsequently sued SMART seeking payment of PIP benefits for the medical treatment she received. *Id*. at ___; slip op at 11-12. After SMART moved for summary disposition on the ground that the plaintiff did not have a legal right to collect benefits that she had assigned to her medical providers, the plaintiff obtained mutual rescissions from all of her medical providers. *Id*. at ___; slip op at 12. The trial court denied SMART's summary disposition motion in relevant part. *Id*.

Our Supreme Court framed the issues as follows:

> The plaintiffs in both cases claim that they have standing and are a real party in interest—regardless of their assignments—because the no-fault act provides a direct cause of action to recover PIP benefits. C-Spine further argues that it only partially assigned its claims to third parties or that its post-litigation counter-assignments resolved any standing or real party in interest issue. [The plaintiff in *Wallace*] similarly claims that her post-litigation revocation or rescission of assignments resolved these issues.
>
> All defendants argue that plaintiffs lacked standing and were no longer real parties in interest once their claims were assigned away. They further argue that the one-year-back rule, MCL 500.3145(2), prevents plaintiffs' claims from moving forward . . . . [*Id*. at ___; slip op at 14.]

Addressing these issues required the Court to review the "law regarding assignments, standing and real parties in interest, and the relation back of amendments to complaints." *Id*.

With respect to assignments, our Supreme Court explained that " '[u]nless in some way qualified, [an assignment] is properly the transfer of one's whole interest in an estate, or chattel, or other thing' " and that an assignment is "an 'absolute' transfer of the claim at issue that 'extinguishe[s]' the assignor's rights." *Id*. at ___; slip op at 15 (citations omitted; second and third alterations in original). Accordingly, "Michigan courts have long recognized that a plaintiff who

-14-

assigns a claim cannot then bring suit to collect on that claim as that plaintiff is no longer the real party in interest." *Id*. However, "an assignor may choose to assign away only part of their claim" because although "an assignment is absolute with respect to the rights assigned away, there is flexibility in the scope of what is assigned." *Id*. Our Supreme Court also recognized that "it has long been the law in Michigan that a claim may be assigned for the purposes of collection, allowing the assignee to litigate the claim and reserving to the assignor the right to proceeds recovered." *Id*. at ___; slip op at 16. Thus, "where an assignment is such that satisfaction of the judgment obtained by the assignee will discharge the defendant from his obligation to the assignor, for the purpose of the suit the assignee is the real party in interest and may maintain an action in his own name." *Id*. (quotation marks and citation omitted).

Next, our Supreme Court clarified the distinction between the concepts of "standing" and "real party in interest," stating:

> While the two doctrines function similarly in practice, they are derived from different sources and serve different purposes. As a result, it is incorrect to assume that all features of our standing doctrine necessarily carry over to the real party in interest context—or vice versa. Similarly, the fact that a plaintiff is not the real party in interest does not necessarily mean that the suit will fail for lack of standing. [*Id*. at ___; slip op at 17.]

Under Michigan Supreme Court jurisprudence, the concept of "standing" is a " 'limited, prudential' doctrine, intended 'to assess whether a litigant's interest in the issue is sufficient to "ensure sincere and vigorous advocacy." ' " *Id*., quoting *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355; 792 NW2d 686 (2010). Thus,

> a litigant has standing whenever there is a legal cause of action. Further, whenever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment. Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing. A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant. [*C-Spine*, ___ Mich at ___; slip op at 18, quoting *Lansing Sch Ed Ass'n*, 487 Mich at 372.]

The real-party-in-interest rule, in contrast to the concept of standing, "is derived from statutes and court rules." *C-Spine*, ___ Mich at ___; slip op at 18. Both MCL 600.2041 and MCR 2.201(B)(1) require actions to " 'be prosecuted in the name of the real party in interest.' " *C-Spine*, ___ Mich at ___; slip op at 18-19. The requirement exists to protect defendants from multiple lawsuits for the same claim:

> Statutes requiring every action to be prosecuted in the name of the real party in interest are enacted to protect defendant from being repeatedly harassed by a multiplicity of suits for the same cause of action, but so long as the defendant's

rights are fully protected in the litigation, he cannot complain. He is entitled to be protected against vexatious litigation by different parties claiming to assert the same cause of action, but so long as the final judgment, when and if obtained, is a full, final, and conclusive adjudication of the rights in controversy that may be pleaded in bar to any further suit instituted by any other party, the defendant is not harmed. [*Id*. at ___; slip op at 20 (quotation marks and citation omitted).]

"Accordingly, a party may sue as the real party in interest if he can legally discharge the debtor and the satisfaction of judgment rendered will operate as such discharge, notwithstanding that the amount recovered may be for the benefit of another." *Id*. at ___; slip op at 21 (quotation marks and citation omitted).

The Court agreed "with defendants to the extent that they argue that real party in interest status is initially assessed at the time a complaint is filed" but did "not agree that a real party in interest defect cannot be remedied after filing." *Id*. Thus, "failure to bring suit in the name of the real party in interest is a ground for dismissal," but "it does not follow . . . that a suit originally filed in the name of someone other than the real party in interest must *necessarily* be dismissed" because it "is possible, in some circumstances, for a plaintiff to cure this defect." *Id*. at ___; slip op at 22. However, the Court explained that curing a real party in interest defect required the plaintiff to take "proper steps":

A plaintiff may not fix real party in interest defects by unilateral actions taken outside of court, as the plaintiffs here attempted. Instead, plaintiffs must take some action in the litigation that would allow the court to assess the effect of the change in parties. [*Id*. at ___; slip op at 23.]

The Court provided a non-exhaustive list of potential actions in the litigation for curing a real party in interest defect, which included filing an amended complaint that joined or substituted the proper plaintiff, intervention by the real party in interest, filing an amended complaint reflecting that the plaintiff had become the real party in interest through an assignment, and seeking the equitable remedy of rescission of a prior assignment in order to "effectively" render the plaintiff "the real party in interest at the time the suit was filed." *Id*. at ___ & n 20; slip op at 23-24, 23 n 20. Importantly, all of these actions would allow a court "to consider whether the correction of the real party in interest defect may relate back to when the original complaint was filed, or whether the suit will be barred by the running of the statute of limitations or the one-year-back rule—as well as any other obstacles that might arise." *Id*. at ___; slip op at 23-24.

In the last section of its review of the relevant legal background, our Supreme Court reiterated the well-established principle that the Michigan Court rules generally are "generous" in permitting the filing of amended complaints and the joinder or substitution of parties. *Id*. at ___; slip op at 24, citing MCR 2.118(A)(2); MCR 2.116(I)(5); MCR 2.207; and MCR 2.202(D). The Court also noted that the court rules "empower a trial court to deny such relief if it would be unjust." *C-Spine*, ___ Mich at ___; slip op at 24, citing *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997); MCR 2.207; and MCR 2.118(A)(3). Under MCR 2.118(D), amendments adding a new claim, defense, new facts, or a new theory relate back to the date of the original pleading as long as the new assertion arises out of the same transactional setting that was pleaded originally. *Id*. at ___; slip op at 25. "[T]he relation-back doctrine does not apply to the addition

of new parties," but "the misnomer doctrine . . . allows for the correction of inconsequential deficiencies or technicalities in the naming of parties[.]" *Id*. (quotation marks and citations omitted; second alteration in original). Furthermore, the Court recognized authority from this Court that holding that "the plaintiffs' motion to file an amended complaint under MCR 2.118(D), in which they sought to add assignments from the patient to the plaintiff medical providers, amounted to a motion to supplement the pleadings under MCR 2.118(E)," which "barred the plaintiffs from recovery because a supplemental pleading does not relate back to the original complaint date and the plaintiffs' claims were filed past the one-year-back date." *Id*. at ___; slip op at 25-26, citing *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 202-205; 920 NW2d 148 (2018), lv den 504 Mich 987 (2019).[8]

> Returning to the facts of the consolidated cases before it, the Supreme Court held
>
> that both plaintiffs had standing to file their lawsuits under MCL 500.3112, but they were not real parties in interest at the time the lawsuits were filed because they had fully assigned their respective rights to PIP benefits to third parties. Both C-Spine and [the plaintiff in *Wallace*] had their real party in interest status restored after commencing litigation. However, they have not yet taken proper steps in the trial court to fully cure their real party in interest defects.
>
> C-Spine fully assigned away its rights and did not retain a right to litigate the claims at issue, though it did not lose its standing. Its counter-assignments were effective in returning its real party in interest status—though it did not take action in the trial court, such as amending its complaints to reflect the counter-assignments, that would have allowed the trial court to consider the effect of this change. We remand C-Spine's case for further proceedings given that the lower courts have thus far only addressed the real party in interest issue through the erroneous lens of standing.
>
> As to [the plaintiff in *Wallace*], she also retained standing to file a lawsuit, but she lost her real party in interest status when she assigned her claims to her medical providers. If Wallace's mid-litigation agreements with the providers are construed as revocations—as the Court of Appeals concluded—the revocations would restore her real party in interest status. We express no opinion on whether the one-year-back rule bars Wallace's claims in light of the rescissions she claims to have obtained from her medical providers. We remand to the trial court to consider whether [the plaintiff in *Wallace*] is entitled to equitable rescission in the first instance. [*Id*. at ___; slip op at 26-27.]

Here, the trial court granted summary disposition to Progressive because plaintiff was not the real party in interest as a result of the assignments she executed and thus had no right to prosecute this action for recovery of the benefits she assigned. Further, the trial court ruled that the revocations were "too late" because plaintiff was not the real party in interest "at the time of

---

[8] In a footnote, the Supreme Court stated that it expressed no opinion whether that holding in *Shah* was correct. *C-Spine*, ___ Mich at ___; slip op at 26 n 21.

filing." The trial court finally concluded that "no supplemental pleadings have been filed in this case and any additional claims Plaintiff would wish to make would be barred by the one year back rule MCL 500.3145."

Under *C-Spine*, the legal framework employed by the trial court in the present case is erroneous. First, the assignments executed by plaintiff did not deprive her of standing under MCL 500.3112. *C-Spine*, ___ Mich at ___; slip op at 27 ("Policyholders have always had the ability to file a lawsuit against their insurers to claim benefits under the no-fault act . . . ."); see also MCL 500.3112 ("Personal protection insurance benefits are payable to or for the benefit of an injured person . . . ."). Plaintiff does not dispute that she executed assignments to the medical providers at issue, but she argues her real-party-in-interest defect was cured by mutual rescissions of those assignments. All of the mutual rescissions include language stating that the relative assignments were "mutually rescind[ed]" and rendered "nullified" and "void ab initio." The trial court ruled, "Any revocation of assignments produced by Plaintiff are too late for Plaintiff to have included the bills from Capital Surgery as they did not have this right at the time of filing." However, as with the plaintiff in *Wallace*, if these "mid-litigation agreements with the providers are construed as revocations . . . the revocations would restore her real party in interest status." *C-Spine*, ___ Mich at ___; slip op at 27. Thus, the basis for the trial court's ruling granting Progressive's motion for summary disposition was legally erroneous and is reversed. *Cannon Twp*, 311 Mich App at 411.

Nonetheless, as previously stated, a "plaintiff may not fix real party in interest defects by unilateral actions taken outside of court" and must instead "take some action in the litigation that would allow the court to assess the effect of the change in parties." *C-Spine*, ___ Mich at ___; slip op at 23. Moreover, our Supreme Court further explained as follows in analyzing the argument presented by the plaintiff in *Wallace* that mutual rescissions cured the real party in interest defect:

> [R]escission of a contract subject to litigation "does not function by automatic operation of the law." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 411; 919 NW2d 20 (2018). Rather, it is an equitable remedy that the trial court may grant, in its discretion, after balancing the equities. See *id*. at 409.
>
> These same equitable considerations apply to a court's decision to extend the effect of a rescission to a third party. See *id*. at 410-411; see also *Univ of Mich Regents v Mich Auto Ins Placement Facility*, 340 Mich App 196, 206; 986 NW2d 152 (2022) (noting that trial courts are required to balance the equities between a defrauded insurer and an innocent third party before extending the mutual rescission of a no-fault insurance policy to the third party). While courts may extend a mutual rescission to third parties as an equitable remedy, [the plaintiff] and her medical providers cannot unilaterally declare a "rescission" and apply its effects retroactively to ongoing litigation with third parties. Even if [the plaintiff] and her providers' actions were sufficient to effect a mutual rescission of the assignments, that rescission could not be given legal effect as to a third party without a ruling from a court.
>
> Here, the trial court accepted [the plaintiff's] rescissions, allowing the case to proceed. But it never balanced the equities, which an equitable rescission would

-18-

require. The Court of Appeals treated the "rescissions" as revocations and held that, even though [the plaintiff] had her claims restored to her, she could not prevail because of the one-year-back rule.

But a rescission is not the same as the revocation, repudiation, or cancellation of a contract. See *Wall v Zynda*, 283 Mich 260, 264; 278 NW 66 (1938) (" 'To rescind a contract is not merely to terminate it, but to abrogate and undo it from the beginning[.] . . . Rescission necessarily involves a repudiation of the contract and a refusal of the moving party to be further bound by it. But this by itself would constitute no more than a breach of the contract or a refusal of performance, while the idea of rescission involves the additional and distinguishing element of a restoration of the status quo.' ") (citation omitted). If the court recognizes a rescission, an equitable remedy, it is as if the contract at issue never existed. See *id*.; *Esurance Prop & Cas Ins Co v Mich Assigned Claims Plan*, 507 Mich 498, 515 n 37; 968 NW2d 482 (2021) ("[R]escission abrogates a contract completely. All former contract rights are annulled, and it is as if no contract had been made.") (quotation marks and citations omitted; alteration in original).

Here, a rescission would make things as if the first assignments from [the plaintiff] to her providers never existed. But, because rescission is an equitable remedy, a court would have to balance the equities before granting that relief. The distinction between rescission and revocation matters here. The Court of Appeals, treating the agreements as revocations, recognized that they returned [the plaintiff's] rights to sue, but concluded that they did so too late. . . . Had it recognized them as rescissions the result might have been different.

Given its understanding of the legal issues before it, the trial court did not need to engage in a rescission analysis. The issue must now be reconsidered. Because rescission is "a remedy, the granting of which rests in the sound discretion of the court," *Bazzi*, 502 Mich at 409 (quotation marks and citation omitted), the trial court ought to consider this issue in the first instance. We take no position on whether rescission would be available to [the plaintiff] on these facts or whether it would be equitable under the circumstances.

We therefore hold that [plaintiff] had standing when she filed her lawsuit, she was not the real party in interest at that time, and her real party in interest status was restored when she obtained the "mutual rescissions." We vacate the conclusion of the Court of Appeals that [the plaintiff's] claims are barred by the one-year-back rule. And we remand the matter to the trial court to consider whether equitable rescission should apply to the case, see *Bazzi*, 502 Mich at 410, and whether the real party in interest defect that existed at filing can be cured. [*C-Spine*, ___ Mich at ___; slip op at 33-37 (first ellipsis and sixth and seventh alterations in original).]

The same analysis is applicable to the present case. Here, the trial court also did not engage in a rescission analysis, and the matter must be remanded to the trial court for it to consider in the first instance whether equitable rescission should apply and any further implications of that determination. Because the trial court's ruling that the one-year-back rule would have still barred

-19-

plaintiff's claims was also based on the trial court's incorrect understanding regarding the effect of a valid mutual rescission, that ruling is also vacated so the trial court may reconsider that ruling under the proper legal framework. When the trial court addresses this question on remand, the trial court must also consider footnote 28 of the *C-Spine* opinion, which states:

> We note that the Court of Appeals incorrectly considered whether the medical providers (the assignees who were the real parties in interest at the time the lawsuit was filed) had an actionable claim to assign in light of the one-year-back rule, not whether Wallace would have been able to litigate the claims herself. See id. While any claims from the medical providers would have been barred under the one-year-back rule, the fact that they are "liable to be defeated" does not prevent those claims from being assigned. *Kane v Clough*, 36 Mich 436, 440 (1877). [*C-Spine*, ___ Mich at ___ n 28; slip op at 35 n 28.]

The Michigan Supreme Court in *C-Spine* also recognized "the existence of a legal—rather than equitable—rescission remedy," but it explained that this remedy is "procedurally distinct and require[s] the plaintiff to tender to the other party, as a precondition of suit, specific restitution of everything received under the contract." *Id*. at ___ n 25; slip op at 33 n 25 (quotation marks and citation omitted). The Court determined that it did not need to address whether legal rescission was an available remedy in the *Wallace* case because the plaintiff did not claim compliance with those procedural requirements. *Id*. Here, plaintiff also does not appear to claim to have complied with these procedural requirements and the remedy of legal rescission is not at issue at this juncture.

We therefore vacate the trial court's May 16, 2023 order granting Progressive's motion for summary disposition, and we remand this matter for further proceedings consistent with this opinion.

Vacated and remanded. We do not retain jurisdiction. Plaintiff having prevailed is entitled to tax costs. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ Michael J. Kelly
/s/ Christopher M. Trebilcock