*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PAMELA EIDT, and All Others Similarly Situated,

      Plaintiff-Appellant,

v

GREAT LAKES WATER AUTHORITY and CITY
OF DETROIT,

      Defendants-Appellees.

UNPUBLISHED
August 21, 2025
2:49 PM

No. 368545
Wayne Circuit Court
LC No. 22-001315-NZ

Before: REDFORD, P.J., and RIORDAN and BAZZI, JJ.

PER CURIAM.

In this case involving claims for property damage under Michigan's Sewage Disposal
System Event (SDSE) exception to governmental immunity, MCL 691.1401 *et seq.*, plaintiff
appeals as of right the trial court's opinion and order granting summary disposition in favor of
defendants under MCR 2.116(C)(7) (governmental immunity). We reverse and remand.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff is a resident of Detroit, Michigan, and lives in an area of the city that is served by
the Bluehill Pumping Station (Bluehill PS). The Bluehill PS is operated and maintained by
defendant Great Lakes Water Authority (the GLWA), while the local sewers in question are owned
by defendant city of Detroit (city). The bifurcation of systems into local and regional sewer
systems was accomplished in 2015 when the GLWA became responsible for operating the regional
system. Thus, since 2015, the GLWA has been responsible for operating and maintaining the
regional system.

The local sewer system captures rainfall and other moisture through stormwater inlets,
combines the water with the sanitary flow from other sewers, and conveys the water to the regional
sewer system. The Bluehill PS is an unmanned pumping station consisting of three large
stormwater pumps, one small stormwater pump, and two sanitary pumps. Operation of the Bluehill
PS is completed through an offsite system control center with monitors and alarms. The Bluehill
PS also has emergency generators that are activated if there is a loss of power.

-1-

According to plaintiff, on July 16, 2021, her home was flooded as a result of defects with the Bluehill PS and with the city's sewage disposal system. Plaintiff's complaint alleged that there was a power interruption that caused the pumps to fail, which was not rectified in a timely manner. Plaintiff also alleged that the sewer system was inadequately constructed, maintained, and operated. Plaintiff filed suit on February 2, 2022, asserting one count against defendants for a "sewage disposal system event pursuant to MCL 691.1416 *et seq.*"

Defendants moved for summary disposition of plaintiff's complaint under MCR 2.116(C)(7), asserting that plaintiff failed to demonstrate that she was entitled to overcome governmental immunity under the SDSE exception. The trial court agreed, concluding that the overvoltage of power from the power company, the Public Light Department (the PLD), was an unforeseeable event and was not a cognizable claim under the statute. This appeal ensued.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Milo v Dep't of Transp*, 318 Mich App 272, 275; 897 NW2d 248 (2016). "A defendant is entitled to summary disposition under MCR 2.116(C)(7) if the plaintiff's claims are barred because of immunity granted by law." *Id*. "When reviewing a motion for summary disposition under this subrule, a court accepts all well-pleaded factual allegations as true and construe[s] them in favor of the plaintiff, unless other evidence contradicts them." *Goodhue v Dep't of Transp*, 319 Mich App 526, 530; 904 NW2d 203 (2017) (quotation marks and citation omitted; alteration in original).

> If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate. [*Dextrom v Wexford Co*, 287 Mich App 406, 429; 789 NW2d 211 (2010).]

This Court also reviews de novo issues of statutory interpretation. *Lear Corp v Dep't of Treasury*, 299 Mich App 533, 536; 831 NW2d 255 (2013). "If a statute is unambiguous, it must be applied as plainly written, and we may not read any unstated provisions into the statute." *Moore v Genesee Co*, 337 Mich App 723, 728; 976 NW2d 921 (2021). "A statutory provision is ambiguous only if it conflicts irreconcilably with another provision or it is equally susceptible to more than one meaning." *Detroit Media Group, LLC v Detroit Bd of Zoning Appeals*, 339 Mich App 38, 51; 981 NW2d 88 (2021) (quotation marks and citation omitted). "The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature." *Ewin v Burnham*, 272 Mich App 253, 255; 728 NW2d 463 (2006).

## III. SEWAGE DISPOSAL SYSTEM EVENT EXCEPTION TO GOVERNMENTAL IMMUNITY

Plaintiff argues that the trial court erred when it granted defendants' motions for summary disposition because she presented sufficient evidence of defects in the sewage disposal system to

survive summary disposition. Plaintiff further argues that the trial court erred when it concluded that the overvoltage from the PLD was an unforeseeable and substantial proximate cause of the flood for which defendants had no authority over. We agree.

A governmental agency is normally immune from tort liability when it is "engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). "Immunity from tort liability . . . is expressed in the broadest possible language—it extends immunity to all governmental agencies for all tort liability whenever they are engaged in the exercise or discharge of a governmental function." *Nawrocki v Macomb Co Road Comm*, 463 Mich 143, 156; 615 NW2d 702 (2000). The exceptions to governmental immunity, which are expressed in the statute, are "to be narrowly construed." *Cannon Twp v Rockford Pub Sch*, 311 Mich App 403, 415; 875 NW2d 242 (2015).

One such exception to governmental immunity is the SDSE exception. A sewage disposal system event is defined as "the overflow or backup of a sewage disposal system onto real property." MCL 691.1416(k). However,

[a]n overflow or backup is not a sewage disposal system event if any of the following was a substantial proximate cause of the overflow or backup:

(*i*) An obstruction in a service lead that was not caused by a governmental agency.

(*ii*) A connection to the sewage disposal system on the affected property, including, but not limited to, a sump system, building drain, surface drain, gutter, or downspout.

(*iii*) An act of war, whether the war is declared or undeclared, or an act of terrorism. [MCL 691.1416(k).]

Under MCL 691.1417(2), "[a] governmental agency is immune from tort liability for the overflow or backup of a sewage disposal system unless the overflow or backup is a sewage disposal system event and the governmental agency is an appropriate governmental agency." For a plaintiff to avoid governmental immunity under this exception, the plaintiff must demonstrate the following elements:

(a) The governmental agency was an appropriate governmental agency.

(b) The sewage disposal system had a defect.

(c) The governmental agency knew, or in the exercise of reasonable diligence should have known, about the defect.

(d) The governmental agency, having the legal authority to do so, failed to take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect.

(e) The defect was a substantial proximate cause of the event and the property damage or physical injury. [MCL 691.1417(3).]

The term "defect" is defined as "a construction, design, maintenance, operation, or repair defect." MCL 691.1416(e). " 'Substantial proximate cause' means a proximate cause that was 50% or more of the cause of the event and the property damage or physical injury." MCL 691.1416(*l*). Furthermore, the term "sewage disposal system" is defined as:

all interceptor sewers, storm sewers, sanitary sewers, combined sanitary and storm sewers, sewage treatment plants, and all other plants, works, instrumentalities, and properties used or useful in connection with the collection, treatment, and disposal of sewage and industrial wastes, and includes a storm water drain system under the jurisdiction and control of a governmental agency. [MCL 691.1416(j).]

The terms "sewer" and "sewage" are not expressly defined under the statute and are, therefore, given their plain and ordinary meaning. *Cannon Twp*, 311 Mich App at 416. "The word 'sewer' is commonly defined as 'an artificial conduit, usu. underground, for carrying off waste water and refuse, as in a town or city.' Consistent with this definition, 'sewage' is itself commonly understood to mean 'the waste matter that passes through sewers.' " *Id*. at 416-417 (citation omitted).

Plaintiff argues that the trial court erred because she raised genuine issues of material fact concerning whether there was a defect in the sewage disposal system that caused the July 16, 2021 flood.[1] Plaintiff further contends that the sewage disposal sewage contained numerous defects, including obstructed inlets, insufficient capacity and outlets, and a failure to provide redundant power in the event of a power interruption. The trial court did not address any of the claimed defects except for the alleged lack of electrical redundancy, which it determined was not a defect because the issue originated with the PLD and was unforeseeable. The court ruled that the overvoltage from the PLD did not amount to a defect because the emergency generators at the Bluehill PS were not configured to start when there was an overvoltage, only when there was a power outage. The trial court additionally resolved that the electrical system for the Bluehill PS was not included in the definition of a sewage disposal system and, thus, could not qualify as a defect.

The trial court erroneously concluded that the failure of the generators to start, caused by overvoltage from the PLD, did not constitute a defect. In support of this conclusion, the court determined that the overvoltage in the service line from the PLD to the Bluehill PS was an

---

[1] As plaintiff notes, generally, a motion for summary disposition is premature before the completion of discovery on a disputed issue. *Peterson Novelties*, *Inc v City of Berkley*, 259 Mich App 1, 24-25; 672 NW2d 351 (2003). However, summary disposition may be appropriate if further discovery does not stand a reasonable chance of disclosing factual support for the position of the opposing party. *Id*. at 25. While the trial court did not explicitly grant defendants' motion for a protective order to stay discovery, it effectively granted that relief by ruling on defendants' motion for summary disposition before discovery fully commenced, despite plaintiff's motions to compel discovery-related action.

"overflow or backup" in a "service lead." Thus, according to the trial court, plaintiff's claim failed under MCL 691.1416(k)(*i*), which excludes from the definition of "sewage disposal system event" "[a]n obstruction in a service lead that was not caused by a governmental agency." However, the connection between the PLD's line and the Bluehill PS is not a "service lead," as that term is used and defined in the statute. Under MCL 691.1416(i), a service lead "means an instrumentality that connects an affected property, including a structure, fixture, or improvement on the property, to the sewage disposal system and that is neither owned nor maintained by a governmental agency." In turn, the term "affected property" encompasses "real property affected by a sewage disposal system event." MCL 691.1416(a). Stated alternatively, under the statute, the service lead for purposes of MCL 691.1416(k)(*i*) is the connection between the claimant's property and the sewage disposal system that runs outside of it. In the instant matter, the affected property was plaintiff's property, not the Bluehill PS. Thus, the trial court erred when it resolved that the SDSE exception did not apply under this provision.

Further, the trial court determined that the overvoltage did not constitute a defect, reasoning that the condition involved a power surge rather than a power failure. This distinction, however, is not reflected in the applicable standards for the design and construction of pumping stations. In the Recommended Standards for Wastewater Facilities, under the section covering "Emergency Operation," the manual states:

> Emergency pumping capability is required unless on-system overflow prevention is provided by adequate storage capacity. Emergency pumping capability shall be accomplished by connection of the station to at least two independent utility substations, or by provision of portable or in-place internal combustion engine equipment which will generate electrical or mechanical energy, or by the provision of portable pumping equipment. Such emergency standby systems shall have sufficient capacity to start up and maintain the total rated running capacity of the station. Regardless of the type of emergency standby system provided, a portable pump connection to the force main with rapid connection capabilities and appropriate valving shall be provided outside the dry well and wet well. [Wastewater Committee of the Great Lakes—Upper Mississippi River Board of State and Provincial Public Health and Environmental Managers, *Recommended Standards for Wastewater Facilities* (New York: Health Research, Inc, 2004), p 27.]

The cited standard makes no distinction between a power outage and an overvoltage. Rather, the standard simply calls for "[e]mergency pumping capability," implying that if power to the station is interrupted, the emergency generators should start. Thus, to the extent the trial court ruled that an overvoltage does not qualify as a defect because the standard was solely applicable to power outages, such a conclusion is unsupported by the text of the standards themselves.

The trial court additionally erred in concluding that the electrical system connected to the Bluehill PS was not part of the sewage disposal system, as that term is defined in the statute. The court opined that "if the Legislature intended to include 'electrical system' in the definition, [it] would have included it in the definition of 'sewage disposal system' in MCL 691.1416(j)."

In *Cannon Twp*, 311 Mich App at 407-408, the plaintiff-township filed suit against the defendant-school after a power outage caused a valve in the school's water filtration system to

remain open, which led to a prolonged backwash cycle. The defendant moved for summary disposition on the basis of governmental immunity, claiming that the plaintiff failed to properly plead its claims in avoidance of summary disposition. *Id*. at 409-410. The trial court denied the motion, concluding that the plaintiff sufficiently pleaded its claim to avoid governmental immunity. *Id*. at 410.

On appeal, this Court affirmed. *Id*. at 419. The *Cannon Twp* Court denied the defendant's argument that the filtration system was not part of the sewage disposal system, stating:

> Because the system collects and disposes of unwanted wastes, and because those unwanted wastes are discharged directly into a sewer line, we hold that the filtration system is properly considered an "instrumentality" "used or useful in connection with the collection, treatment, and disposal of sewage and industrial wastes[.]" MCL 691.1416(j). Because the township could show that the water filtration system is a "sewage disposal system" for purposes of the " sewage disposal system event" exception to the GTLA, [the defendant] was not entitled to summary disposition on this ground. [*Cannon Twp*, 311 Mich App at 417 (first alteration in original).]

Similarly, this Court concluded that the plaintiff sufficiently demonstrated that the interruption of power was actionable under the statute:

> In this case, as the trial court noted, the parties do not dispute the nature of the flaw in the water filtration system at the time the sewage backup occurred: if electrical power to the system was interrupted during a backwash cycle, the valves remained in the open position after the power was restored, resulting in a large amount of water being discharged into the sewer line, which overwhelmed the Davies line and led to sewage backups. The trial court correctly held that plaintiff had presented sufficient evidence of a "defect" of some kind, whether in design, construction, or mere operation, in the sewage disposal system, sufficient to avoid governmental immunity. [*Id*. at 417-418.]

Under *Cannon Twp*, the trial court erred when it determined that because the electrical system at the Bluehill PS was not part of the sewage disposal system, plaintiff's claim was subject to dismissal. In essence, the trial court failed to distinguish between the systems and responsibilities of the PLD and those of defendants. While the evidence suggests that the overvoltage originated with the PLD, such would be the case with a power failure as well. Although the PLD supplied excessive power instead of insufficient power, the effect on the pumping station was the same: the pumps stopped working. The *Cannon Twp* Court held that the plaintiff had an actionable claim where the water filtration system malfunctioned because there was an interruption of power to the system. *Id*. at 418. In other words, the issue in *Cannon Twp* was not whether the electrical power coming into the system was part of the sewage disposal system, but rather how the filtration system operated when there was a loss of power. This principle is equally applicable here: the Bluehill PS lost power to the pumps when the PLD sent an overvoltage, which interrupted the power supply. Because the generators were not configured to turn on when there was an overvoltage, the pumps largely ceased functioning. Thus, the pertinent question is whether the failure of the pumps to activate was a defect, and *Cannon Twp*

instructs that for purposes of summary disposition on the basis of governmental immunity, it is an actionable claim.

Plaintiff must still establish, however, that defendants knew or "in the exercise of reasonable diligence" should have known about the failure of the pumps to operate in an overvoltage situation. MCL 691.1417(3)(c). The trial court, with minimal analysis, concluded that the overvoltage from the PLD was unforeseeable. The only substantive evidence presented by defendants with respect to the operation of the Bluehill PS was the statements from Samuel Smalley, the water and sewage department chief operating officer. But Smalley did not comment on the foreseeability of an overvoltage from the PLD. Conversely, plaintiff presented an affidavit from James Heyl, a licensed engineer, who opined that the issue was known to defendants because the PLD's "primary service lines to the Bluehill [PS] have previously provided defective voltage instability that affected the pump station's operational effectiveness." In a motion under MCR 2.116(C)(7), the trial court is required to accept plaintiff's well-pleaded allegations as true, unless there is documentary evidence to contradict it. *Goodhue*, 319 Mich App at 530. Contrary to this standard, the trial court rejected plaintiff's contentions and evidence regarding defendants' knowledge of the defect, and it erroneously determined, without any supporting evidence in the record, that the overvoltage was unforeseeable.

Defendants urge this Court to affirm the trial court's order on alternative grounds, namely that there was sufficient evidence to show that the July 16, 2021 storm exceeded the 10-year, one-hour storm volume and was, in fact, a "50-300 year storm." Stated alternatively, defendants contend that the sewers are designed to accommodate inflows resulting from 10-year, one-hour storms, and that any greater inflow would exceed the system's design capacity. But the evidence allegedly substantiating defendants' allegation, an affidavit from Ed Hogan, a licensed engineer, expressly notes that his analysis contradicts plaintiff's assessment of the rainfall, which estimated the storm to be an eight-year, one-hour storm. Hogan advanced that plaintiff "did not reliably estimate the amount of rainfall" and "used an area more than three times the size of the Bluehill [PS] service area." Thus, in actuality, Hogan identified a genuine factual dispute regarding the amount of rainfall on July 16, 2021, in the impacted area, and whether it exceeded or fell below the design standards of the sewer system. Given the existence of a genuine issue of material fact, summary disposition in favor of defendants on this ground is improper.

Defendants further request that this Court affirm on the alternative basis that plaintiff's complaint failed to allege that there was a defect related to the power supply to the Bluehill PS. Under MCR 2.111(A)(1), "[e]ach allegation of a pleading must be clear, concise, and direct." The complaint must contain "[a] statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend." MCR 2.111(B)(1). The complexity of the litigation dictates the degree of specificity required in a complaint. *Kincaid v Cardwell*, 300 Mich App 513, 530; 834 NW2d 122 (2013) (stating, "[I]t is the nature of the cause of action itself which will dictate the degree of specificity required, i.e., the more complex the action, the more specific the averments should be") (alteration in original; quotation marks and citation omitted).

In this case, plaintiff contended, "On or about July 16, 2021, Plaintiffs' homes and many hundreds of other private properties within the Bluehill Pumping Station Service Area in eastern

Detroit were unreasonably invaded and interfered with, resulting from the flooding and invasion of Plaintiffs' properties by sewage . . . ." According to the complaint, "[d]efendants improperly designed, constructed, operated, maintained, and/or repaired the portion of the Sewage Disposal System that they control and/or discharge into, causing significant economic damages . . . ." Specifically, plaintiff asserted, "The Bluehill [PS] experienced a power failure during the July 16, 2021 rain event, significantly delaying operation of its storm pumps." Plaintiff further advanced, "Defendants' failures to design, construct, operate, maintain and/or repair the Sewage Disposal System in a reasonable manner were a substantial proximate cause of the Sewage Disposal System Events that resulted in the widespread flooding of, and damages to, Plaintiffs' properties."

Contrary to defendants' argument, plaintiff's complaint alleged sufficient facts to inform defendants that she was pursuing relief under the SDSE exception, and that the overvoltage caused by the PLD was among the grounds on which liability was premised. This was sufficient to put defendants on notice regarding the factual basis for the lawsuit. See *Kincaid*, 300 Mich App at 529 (providing, "A plaintiff must provide sufficient facts in his or her complaint to give the defendant notice of the claims against which he or she must defend . . . .").

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Michael J. Riordan
/s/ Mariam S. Bazzi